## CALVIN CLAY v. THE STATE.

### No. 1936. Decided April 18, 1900.

**1. Cattle-Theft—Expert Evidence as to Hides.**

Witnesses who are cattlemen and have qualified as experts in the cattle and hide business ·may testify that in their opinion certain hides which they have seen and examined were taken from animals recently slaughtered and not taken from animals that died of natural causes.

**2. Same—Declarations of Defendant.**

On a trial for cattle-theft, where the State has not introduced any portion of defendant's conversation with the sheriff after he was put in jail, it is not competent for defendant to prove such conversation and his statements made to the sheriff. Such declarations and statements of defendant as to the stolen animals are only admissible as to his possession when he is first found in possession of the animal and his right thereto had been challenged.

**3. Bill of Exceptions to Excluded Testimony.**

A bill of exceptions to the exclusion of testimony must show the object in desiring such testimony.

**4. Defendant as a Witness—Cross-Examination.**

On a trial for cattle-theft, where a defendant on cross-examination is asked, "Is it not a fact that every Monday morning for a year or so * * * you bought and sold from two to five hides?" to which he answered in the negative, this eliminated an objection that the question related to distinct transactions, and his answer was not calculated to prejudice him.

**5. Same.**

On a trial for cattle-theft it was not error to exclude testimony as to how much money defendant had made cutting and selling hay, nor in refusing to permit defendant to testify as to his reasons for skinning cattle.

**6. Cattle-Theft—Expert Evidence.**

On a trial for cattle-theft a witness can not be permitted to give his opinion as an expert unless he is shown to be an expert. And it is not within the category of expert evidence that four head of cattle could not have died in the same vicinity at the same time unless they died from some prevalent disease.

**7. Same.**

On a trial for cattle-theft, where one of the inculpatory facts was that defendant had sold the hide of the animals, it is not competent to prove by an expert what he could do with reference to catching, choking, and skinning cattle. It would have been admissible for such witness to state what ·a party who was experienced in the business could do in the way of roping and choking cattle to death and then skinning them, and the time that would be thus employed. Disapproving Tyler v. State, 11 Texas Criminal Appeals, 388.

**8. Same—Evidence—Verbal Acts—Defendant's Declarations.**

On a trial for cattle-theft, where the State's theory was that defendant killed the animal and skinned it for the purpose of selling the hide, but the State had introduced no inculpatory testimony as to defendant's skinning cattle on a certain particular occasion, it was incompetent for defendant to prove his declarations as he started from home on that occasion as to what he had seen and what he was

going to do as a part of the res gestae of his act in skinning cattle on said occasion. The rule that a party may prove his verbal acts as explanatory of certain facts does not mean that he can prove some irrelevant fact in order to introduce his statement in regard thereto made at the time and not exculpatory of any fact proved against him.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction of theft of one head of cattle; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the theft of a cow, the property of one S. E. Allen, on the 6th day of November, 1898. Appellant was also separately indicted at the same time with the theft of two animals belonging to one Joe Davis and one animal belonging to one A. Blon.

The charge in this case grew out of the fact that on the 7th day of November, 1898, appellant brought to Houston and sold to a hide house four certain hides, one of which was admittedly taken from the alleged stolen animal in this case, and the other three from the three other alleged stolen animals before mentioned. The State claimed they were stolen, and sought to prove it by the testimony of witnesses as experts, who testified that in their opinion the cattle had been slaughtered for the purpose and their hides then removed for the purpose of appropriating the hides only. On the other hand, appellant's contention was that he found the cattle down and dead, but yet in a fresh condition, and had skinned them, and that he had done so because, knowing the cattle and knowing their owners, and knowing that they were too remote from the herds and places of the owners to be skinned by them, he took the skins off of them, knowing that they would otherwise go to waste, and that in fact he did not take or kill the animals, but only removed the hide, as aforesaid, from them after finding them dead, which he did while out hunting some of his horses that had strayed off from home during his absence at his hay camp, and which ranged in the locality where he found and skinned the cows.

The State relied upon the possession by appellant of the alleged stolen hide, and of the other three hides, and upon the expert testimony that the said hide, by reason of its appearance, weight, and condition, was from a butchered animal, and not from an animal that had died from some other cause, to contradict and overthrow appellant's explanation that he had found the alleged stolen animal, and the three others that he skinned, down and dead, and had skinned them for their hides.

*Brockman & Kahn*, *Wm. Sorley*, and *S. B. Ehrenwerth*, for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of one head of cattle, and his punishment assessed at imprisonment in the penitentiary for a term of two years, and he prosecutes this appeal.

The State introduced a number of witnesses, who testified they were cattlemen, and familiar with handling stock, some of them having been in the business for a number of years. They further testified that from their knowledge of cattle, and examination of hides of cattle slaughtered and that had died from natural causes, they were able to state whether a hide recently taken from an animal was a hide taken from a slaughtered animal or one that died from natural causes, as of murrain or poverty. On this character of proof the court held these witnesses were qualified to testify as experts; and they were then permitted to testify that the hides they examined on Monday morning, November 7, 1898, the day after the alleged theft of the animal in question, were taken from slaughtered animals, and not fallen animals,—that is, animals that died from natural causes. Appellant reserved an exception to all this testimony, on the ground that the matters inquired about were not the subject of expert testimony; that the testimony given was a mere conclusion or opinion of the witness, about which the jury was as capable of forming a conclusion or opinion as the witnesses. We can not agree to this contention. In our opinion, it is competent for a witness, who is shown to be a stockman, and familiar with cattle, and who is also shown to have a knowledge of hides taken from cattle from having seen and examined such hides in the course of their business, and who in that connection is able to state the difference in appearance of hides taken from slaughtered animals and those taken from fallen animals (that is, animals dying from natural causes), to give in evidence before the jury his opinion as to whether a certain hide exhibited to him recently after it was taken from an animal was the hide of an animal which was slaughtered or the hide of an animal which died from natural causes. We think all this character of testimony was admissible. Clark v. State (Texas Crim. App.), 43 S. W. Rep., 522; Stonan v. Waldo, 17 Mo., 498.

Appellant complains that he ought to have been permitted to prove that after he was placed in jail he then stated to the sheriff that he had taken the hide from the animal in question, together with the other hides which he sold in Houston on the morning of November 7, 1898, from dead cows at a certain point on Clear Creek, in Harris County, and that he told the sheriff where the carcasses of said cows could be found, and that said carcasses were accordingly found at the point stated by him. We do not think this testimony was admissible, inasmuch as no part of defendant's conversation with the sheriff at the time was brought out by the State, nor does the bill show it was a statement made by defendant as to his possession when he was first found in possession of the property and his right thereto challenged. McCulloch v. State, 35 Texas Crim. Rep., 268. The bill should have shown

appellant's object in desiring the admission of the excluded testimony. Levine v. State, 35 Texas Crim. Rep., 648.

Appellant insists that the court erred in permitting the State, on cross-examination of appellant, to ask the following question: "Are these all the hides you ever sold to Siewerssen? Is it not a fact that every Monday morning for a year or more prior to this arrest you brought and sold to Siewerssen from two to five hides?" This was objected to because it related to independent and distinct transactions, not in any way connected with the offense here charged against defendant; and that any answer to said question was calculated to prejudice defendant. In reply to this, we have to say that the answer of the witness eliminated the first objection urged, inasmuch as the witness answered in the negative. We do not agree that his answer was calculated to prejudice appellant improperly.

There was no error in the action of the court excluding the testimony offered with reference to how much money appellant had been making by cutting and selling hay, nor in not permitting appellant to testify as to his reason for skinning said animals.

By appellant's twelfth bill of exceptions, he raises the question as to the action of the court permitting the witness Levi Arnold to testify on cross-examination that four cattle would not have died at the same time and in the same place, and within the radius of a mile or so of each other, in November, 1898, unless there had been some disease at the time commonly prevalent among cattle. This testimony was objected to by appellant on the following grounds, to wit: (1) Because the question was a hypothetical one, and the hypothesis was not supported by any part of the evidence in the case, but was contrary to the evidence; (2) because said question sought to elicit the opinion of the witness and a conclusion; (3) because the witness had not shown himself qualified to speak as an expert, nor to give an opinion on the matter inquired about; (4) because the conclusion sought from the witness was not a matter requiring or capable of expert determination. In our opinion, appellant's objections to this testimony were well taken, and ought to have been sustained. Even if it be conceded that this character of testimony was the subject of expert opinion, the witness was not shown to be an expert. But, more than this, we hold that it was a matter about which the witness could not give an opinion as an expert. That four head of cattle could not have died in that vicinity at or about the same time, unless they died from some prevalent disease, does not belong to the category of expert testimony. As to a matter of this character, the witness could state the facts connected therewith, and the jury would be as well qualified to determine whether the particular four head of cattle died from disease or were slaughtered as the expert. Some of the authorities go a long way with reference to what may be introduced as expert or opinion testimony, of which there are examples in Lawson on Expert Opinion Evidence, pages 13, 14. But we know of no case that goes to the extent of holding this character of evidence admissible as expert

or opinion testimony. The rule on this subject has been well defined in Cooper v. State, 23 Texas, 331, and followed in Hardin v. State, 40 Texas Criminal Reports, 208. This evidence was admitted on a crucial point in the case. The theory of the State was that appellant killed the animal in question for the purpose of appropriating the hide; that he stripped the same, with three others killed at the same time, on Sunday, November 6th, and carried them into the city of Houston, some fifteen miles distant, and disposed of them early on the following Monday morning. Appellant admitted the possession of the hide, and its disposition, with three others, in Houston, but claimed that he stripped them from cattle he found dead on the prairie near Clear Creek; and so the case turned on the question as to whether or not, as contended by the State, appellant killed the cow for the purpose of stealing the hide. A good deal of testimony pro and con as to the condition of the hides was admitted, as also expert testimony as to whether the hides were stripped from butchered animals or from fallen animals. There was also testimony for the State showing cattle were in good condition in that section in the fall of 1898, and that at that season of the year but few dead animals were found on the range, and there was no testimony showing that any disease prevailed among cattle in that section at that time. Now to admit the opinion of a witness to the effect that that as many as four carcasses of dead cattle could not be found where the animals in question were found, unless there was some prevalent disease among them, was placing in the scale against appellant illegal testimony to the effect that said animals must have been killed by him, and such testimony was calculated to influence the jury against appellant. We can not say it absolutely did influence them, but it was liable to influence them upon the turning point in the case, and should not have been admitted.

Appellant placed one Jim McNee upon the witness stand, merely for the purpose of proving the general reputation of appellant for honesty. On cross-examination, the State was permitted to prove by said witness that he could catch on the prairie, rope, and tie a cow in three minutes; and that "there were heaps of ways, besides shooting and stabbing cattle, to kill them." For instance, choking was one way; and that witness could catch, and rope, and tie, choke, and skin, four cattle upon the prairie within a period of two hours. This testimony was objected to on the ground that it was not in cross-examination, and that the witness had not qualified as an expert, and that said testimony was not the subject of expert opinion. Evidently, this testimony was not in legitimate cross-examination, nor do we find the witness was qualified to speak as an expert. If he had qualified to speak as an expert, still he should not have been permitted to state what he could do with reference to catching, choking, and skinning cattle. He might have been permitted to state what one who was experienced in the business could do in the way of roping and

41st Crim. Rep.—42

choking cattle to death, and then skinning them, and the time that would be thus employed. This does not seem to be in accord with Tyler v. State, 11 Texas Criminal Appeals, 388. In that case it was held it was not a matter of expert testimony for a witness to state the length of time which would be required to gather a certain number of cattle within the limits of a given range. This case, however, appears to be more restrictive on this subject than the current of authorities, and the decision is questioned by Mr. Lawson. See Lawson on Exp. Opinion Ev., p. 13, and note. And we are inclined to take his view as to the correctness of the decision.

Henry Clay, father of defendant, was introduced as a witness on his behalf, and appellant proved by him that he (appellant) rode off on the prairie on Sunday morning, November 6, 1898, and after about two hours returned home, and then provided himself with a knife, mounted his horse, and rode off on the prairie. Appellant then offered to prove by said Henry Clay that as he rode off equipped for skinning cattle, he stated he had found four dead cattle upon the prairie, which he intended to go and skin. This testimony was objected to by the State, and excluded by the court, and appellant reserved his bill of exceptions. The purpose for which this testimony was offered is not stated in the bill. If it was offered as a verbal act of defendant, in connection with his trip to the prairie where the cattle were skinned, as a part of the res gestae of that act, in order to show the declaration of appellant to the effect that said cattle were found dead on the prairie by him, then he should have stated said purpose in the bill. Mr. Greenleaf says that verbal statements accompanying an act are frequently admissible as tending to illustrate or qualify the same, and gives a number of illustrations, as where a person goes on a journey, or leaves his home, or returns thither, or removes abroad, or secretes himself, or, in fine, does any other act material to be understood, his declarations made at the time of the transaction, and expressive of his character, motive or object, are regarded as verbal acts, indicating a present purpose and intention, and are therefore admitted in proof, like any other material facts. 1 Greenl. on Ev., sec. 108. Now, if the State had proved, as an inculpatory act of defendant on the occasion in question, that he left home on horseback to go to the prairie, then what he said as to where he was going, and his purpose in going, might have been proven as explanatory of his trip to the prairie, as that he stated he was going to the prairie to skin cattle or kill cattle; but we doubt whether a witness would be permitted to state in that connection the same matter in narration of a past transaction, as that he had found dead cattle on the prairie which he was going to skin. Or if appellant, as an exculpatory fact, was authorized to prove that he made a journey to the prairie, then it might be permissible to prove what he said at the time he started on his trip; but we fail to see in this case the relevancy of appellant's trip to the prairie on the occasion in question as exculpatory of any fact proved by the State against defendant. We do

not think the rule means that a party can prove some irrelevant fact in order to introduce his statement in regard thereto made at the time. Certainly, he should not be permitted to show some qualifying statement not immediately explanatory of his trip, but narrative of some past transaction. We do not believe the court erred in rejecting this testimony. The other errors assigned we do not believe are well taken, but for those discussed and pointed out the judgment is reversed, and the cause remanded.

*Reversed and remanded.*