### LESTER PAULK v. THE STATE.

No. 10130.   Delivered March 9, 1927.

Rehearing granted June 6, 1927.

#### 1.—Rape—Evidence—On Act of Intercourse—Properly Admitted.

Where, on a trial for rape, before the appellant had testified and admitted the act of intercourse, there was no error in admitting testimony of the State which was then deemed material, as showing that some man had intercourse with prosecutrix.

#### 2.—Same—Continuance—Properly Refused.

There was no error in refusing appellant a continuance on account of the absence of one of his attorneys, there being several present conducting his trial. That part of his application predicated upon absent witnesses presents no showing of diligence.

#### 3.—Same—Evidence—Attacking Prosecutrix—Properly Rejected.

Where prosecutrix had been subjected to a cross-examination extending over a period of eight hours, there was no error in the Court refusing to permit appellant to prove by her, on cross-examination and by several other witnesses, that the present manner, conduct and demeanor of prosecutrix were different from what same were, when she testified on a habeas corpus hearing.

#### 4.—Same—Statements of Accused—Properly Admitted.

The court, in the light of the facts shown in this case, properly admitted in evidence a statement made by appellant two or three weeks before the alleged rape: "If you see a girl in a car with me and Pete Alexander, if she ain't ——, she will be when she gets back. When we get one that won't —— we just take a handkerchief and put it in her mouth and put it to her anyway." This testimony was admissible as manifesting a malignant disposition toward females. See analagous cases, Miller v. State, 31 Tex. Crim. Rep. 609 and others cited in original opinion.

#### 5.—Same—Evidence—Corroborative of Prosecutrix—Properly Admitted.

Where prosecutrix has testified and described the place where she claimed appellant had carried her, and forcibly ravished her a second time,

there was no error in permitting a witness to testify that he visited the place described, the morning after the purported assault, and the ground bore evidence which indicated a severe struggle.

### 6.—Same—Continued.

And so it was also proper to permit a witness to testify that he heard screams which sounded like a person in pain coming from the place and at the time that prosecutrix testified to the same fact, corroborating her testimony.

### 7.—Same—Evidence—Cross-Examination of Character Witnesses—Properly Excluded.

There was no error in refusing to permit appellant on cross-examination of a character witness of prosecutrix to ask her what she thought about a girl who would go out riding with a man she had never seen before, there being nothing in appellant's bill to show what witness would have answered in reply to such question.

### 8.—Same—Evidence—Of Resistance of Prosecutrix—Properly Admitted.

Where prosecutrix had described in detail just how she had resisted the assault of appellant there was no error to permit her to also say that she had resisted "All that was in her power." Distinguishing Terry v. State, 266 S. W. 510.

### 9.—Same—Requested Charge—Covered by Main Charge—Properly Refused.

Where the court's main charge had correctly presented the issue of penetration, restricting the jury to the consideration of the act of intercourse relied upon by the State, there was no error in refusing a requested charge covering the same matter.

### 10.—Same—Charge of Court—On Resistance of Prosecutrix—Sufficient.

The court's main charge clearly and with sufficient certainty submitted the law as to the amount of resistance which was necessary for prosecutrix to offer, and in addition gave appellant's requested charge on the same subject matter, which the jury could not have misunderstood.

### 11.—Same—Impeaching Defendant—Held Proper.

Appellant having testified in his own behalf there was no error, for the purpose of impeachment to prove that he was under indictment charged with rape in Navarro County.

#### ON REHEARING.

### 12.—Same—Cross-Examination of Prosecutrix—Unduly Restricted.

In our original opinion it was held that the court was warranted in excluding, on cross-examination of prosecutrix, efforts by appellant to show that her general aspect, humiliation, tears and embarrassment shown in giving her testimony on the trial was different from that when giving her testimony on a habeas corpus hearing five days before. We now believe our original opinion in this regard to have been unsound.

### 13.—Same—Continued.

On the trial of appellant, the prosecutrix, the only eye-witness to the

transaction, gave her testimony in a hesitating and embarrassed manner, speaking in a low tone of voice, frequently bursting into tears, and evidencing the greatest humiliation.

### 14.—Same—Continued.

Appellant offered to prove by her that on the habeas corpus hearing, five days before she testified on the trial, in giving her testimony she had answered questions promptly, with head erect, in a defiant manner, engaged in argument with counsel, and showed no timidity, embarrassment or humiliation, shed no tears, but gave her testimony boldly, in a loud tone of voice, audible throughout the same court room. The cross-examination should have been permitted.

### 15.—Same—Cross-Examination—Right Of—Preserved in Bill of Rights.

It has been well said by a text writer, "That the importance of the right of full cross-examination can scarcely be overestimated. As a test of the accuracy, truthfulness and credibility of testimony, it is invaluable. It is the clear right of the cross-examining party to elicit suppressed facts, which weaken or qualify the case of the cross-examining party." Thompson on Trial, 2nd. Ed. Vol. 1, p. 420, Sec. 405.

### 16.—Same—Impeaching Prosecutrix—When Permissible.

Evidence of bystanders of a difference in the demeanor and manner of prosecutrix in giving her testimony on the trial and that upon a former trial would be admissible only to impeach her, after proper predicate laid.

Appeal from the District Court of Ellis County.  Tried below before the Hon. W. L. Harding, Judge.

Appeal from a conviction of rape; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*Farrar & Kemble, Callicut & Upchurch, Mays & Mays, Williams, Williams, McClellan & Lincoln,* for appellant.  On insufficient resistance and acquiescence appellant cites: Terry v. State, 266 S. W. 511; Montgomery v. State, 282 S. W. 758, and Briger v. State, 269 S. W. 100.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, Judge. — Conviction of rape, punishment ninety-nine years in the penitentiary.

The facts show that appellant and one Pete Alexander took three young girls out in a car on the night in question, some distance from the city of Corsicana.  According to the State's theory, after attempted assaults upon the prosecutrix in this case she fled from the car and was pursued by appellant; she

tripped and fell into a ditch upon the side of the road and was.
overtaken and forcibly ravished by appellant, who later carried
her a short distance away into a field where there were some
persimmon sprouts and again forcibly had intercourse with her.
There is some testimony indicating that Alexander made an
assault upon a Miss Butler, but there is no testimony in the
case showing the details of that transaction. We will discuss.
those bills of exception at some length that are analyzed and
discussed in appellant's brief.

Appellant's bill of exceptions No. 1 as qualified presents no.
error. The State by its first witness went into a matter which
was then deemed material as showing that some man had inter-
course with prosecutrix. The State could not know at that time
that appellant was going to take the witness stand and testify
that he did have intercourse with prosecutrix on the occasion in
question with her consent. We perceive no wrong in the State
following the course indicated.

Appellant asked for a continuance because of the absence of
one of the attorneys for the defense. Appellant was ably
defended by a group of distinguished gentlemen, and we are
unable to perceive any reversible error in the action of the court
in this regard. That part of the application for continuance
sought on account of the absence of a witness presents no show-
ing of diligence.

Bills of exception Nos. 3 and 4 show that appellant was not.
permitted to cross-examine prosecutrix as much as he desired
while on the witness stand for the purpose of attempting to show
by her that there was a difference in her demeanor and conduct
and manner of giving her testimony upon this trial, and upon
a prior habeas corpus hearing involving appellant's right to
bail in this case; also bill No. 4 sets out the rejection of testi
mony offered by four witnesses who heard prosecutrix give tes-
timony upon said habeas corpus hearing, and who now offer to
testify that her manner and conduct and demeanor were differ-
ent upon this trial from what same were when substantially
the same testimony was given upon the habeas corpus hearing.
Both these bills are qualified by appending a stenographic report.
of what actually was asked the witness and stated to the court
at the time, and also by a full narration of the facts shedding
light on the situation before the court and affecting the ruling
now here questioned. Accepting the qualifications as speaking
the facts, as same were not objected to, it appears that prosecu-
trix upon the trial of this case was subjected to what the court
denominated "a most vigorous and merciless cross-examination
of something like eight hours by able and ingenious counsel who.

sought by every possible ingenuity in the asking of shameful and humiliating questions seeking to show that she was without virtue, was the leading spirit in the transactions of that night, and sought to collect money from the defendant, etc., and that under such circumstances the witness did often hang her head, seemed crushed and humiliated," etc.    We are cited to no authority supporting appellant's contention that he should have been allowed to go into these matters.    We know of none.    While not undertaking to lay down here any rule applicable to other cases, we are satisfied that under the showing made in this case there was no error.    The proposition advanced by appellant, if upheld, could easily lead the trial courts to interminable investigation upon speculative matters wherein one set of witnesses would give their opinions and another group combat it by the expression of their opinions, and the matter would seem to have no end.

Walter Herrod swore that some two or three weeks before the alleged rape he heard appellant say in a barber shop, "If you see a girl in a car with me and Pete Alexander, if she ain't f—g, she will be when she gets back.   When we get one that won't f—k, we just take a handkerchief and put it in her mouth and put it to her anyway."    This was objected to and a special charge requested asking that the jury be told not to consider said testimony, which charge was refused.    We deem the action of the trial court not erroneous.    Appellant and Pete Alexander were acting together in taking prosecutrix and two other girls, comparative strangers to them, out in a car, and apparently they were acting together in what took place out there.    Prosecutrix asserted that appellant ravished her by force.    His own testimony upon cross-examination is replete with admissions that the girl resisted, begged to be taken home, tried to escape, called for help, tried to push him off, locked her legs, etc.    In homicide cases the rule in regard to threats is settled to be if they are such as showing a reckless disregard for human life, a malignant disposition to kill any and all persons, such threats will be admitted.    Also if they be such as to embrace or include the person actually injured, they will be held competent.    Miller v. State, 31 Tex. Crim. Rep. 609; Goodwin v. State, 38 Tex. Crim. Rep. 466; Green v. State, 90 Tex. Crim. Rep. 154.    In Massey's case, 31 Tex. Crim. Rep. 371, appellant said he intended to have some skin that night, if he had to kill the *girls*.    In Bawcom's case, 94 S. W. Rep. 462, testimony was allowed of the fact that the accused said, "I am going to f—k something before daylight."    In Goodwin's case, supra, it is said:

"If a person declares that he intends to go upon the street

and kill some person, and straightway goes upon the street, armed with a weapon, and slays an individual, evidence of the previous declaration would be admissible * * * * as showing a malignant disposition toward all persons, which would embrace the person slain." In Taylor v. State, 44 Tex. Crim. Rep. 547, the accused said, "I am going to do some devilment and get my name in the paper." This was held admissible as showing a malignant disposition and suggesting that the accused was bent on mischief. In Helvenston's case, 53 Tex. Crim. Rep. 638, it was held proper for a witness to testify that the accused said he had a gun and six shells and was ready for trouble. Mr. Wharton, at page 1704 of his work on Criminal Evidence, says that threats of the accused against a class of persons prima facie referable to the injured party if included, though his name be not mentioned, are admissible, and instances are cited as where one threatens policemen generally and later assaults one. This is in line with what we said in Mathis v. State, 34 Tex. Crim. Rep. 39, where we upheld the admission of proof that three years prior to the homicide in question the accused said he would kill any man who fooled with Mandy Smith, it being shown that when the statement was made, deceased had not begun paying attention to Mandy Smith. We have no doubt under the facts of this case of the admissibility of the testimony under discussion. It was simply an announcement of the fact that when appellant and Pete Alexander took girls out in a car, if they did not submit they would be forced.

Both appellant and prosecutrix testified that an act of intercourse was had in or near some persimmon sprouts in a field belonging to Mr. Hurley, to which point prosecutrix said appellant carried her. We see no error in allowing a witness to testify that the next morning about sunup he went down into said field and where some persimmon sprouts were he saw footprints five or six inches deep and elbow prints approximately four inches deep, and that "it looked like some three or four feet had been plowed back and forth where they had been scuffling or scrambling out there." The objections made that it was not shown that the ground was in the same condition at that place that it was in early the night before, and that no evidence was introduced that other people had not been to the place, and that the testimony that there had been scuffling or scrambling was the opinion of the witness, do not seem valid. As to the last, it would seem a shorthand rendering of the facts, and as to the other objections, they seem to go more to the weight than to the admissibility of the testimony.

We see no soundness in the objection to the testimony of a

witness who said he heard screaming on the night in question near where the alleged assault took place, and further that the screams sounded like persons in pain, and that he heard words used which prosecutrix testified she used in her calls for help.

The State introduced some half dozen witnesses who testified to the good reputation of prosecutrix for virtue and chastity. On cross-examination of one of these witnesses she was asked if she had ever heard of prosecutrix going out riding with a man she had never seen before. Objection to this was sustained. Appellant then asked her what she thought of the propriety of a woman going out with men she did not know, objection to which was also sustained. We observe that there was no attack made upon the reputation of prosecutrix for virtue and chastity by any witness, and further that it is not clear from the bill in question what the witness would have answered to any of the questions set out. We do not deem the matter of such importance as that it would require a reversal, even if erroneous.

There appears an objection to allowing prosecutrix to testify that she resisted "all that was in her power." It will be noted that she had already detailed many things done by her in her efforts to prevent the outrage. No such state of facts appears here as were before the court in Terry v. State, 266 S. W. 510. In the case before us the statement objected to seems a sort of culminating point in the narration of the facts showing the resistance made by prosecutrix. In the case cited there seemed a lack of both resistance and outcry.

In paragraph three of the charge the jury were told that the proof must show beyond a reasonable doubt that the sexual organ of the female was penetrated by the sexual organ of the offending party; and in paragraph eight of the charge the jury were told that they should acquit appellant unless they believed from the evidence beyond a reasonable doubt that the sexual organ of prosecutrix was penetrated by the sexual organ of appellant while the parties were in a certain ditch in Tucker's lane, that being the transaction upon which the State elected to stand. We are unable to see how the special charge, refusal of which is complained of in bill of exceptions No. 18, would have more clearly submitted the disputed issue as to penetration in said ditch.

The charge was excepted to as not being a clear and specific statement of the extent to which prosecutrix must have resisted in order to make the act of appellant, rape. The charge told the jury in its paragraph four that the force used by appellant must have been such as might reasonably be supposed to over-

come all resistance that she was able to exert within her power; further, in paragraph seven the jury were told that if they found the act was with the girl's consent, or that she yielded without sufficient resistance as explained in paragraph four, or if the jury had a reasonable doubt as to whether such act was with consent, or was upon insufficient resistance, they should acquit. In addition to this, a special charge asked by appellant was given stating, in effect, that unless the jury found from the evidence beyond a reasonable doubt that prosecutrix used every exertion in the ditch to prevent the rape, her consent would be presumed in law, and that unless the State had so proven the jury should acquit. We are not inclined to doubt the fact that the jury fully understood from these instructions that they must find that the injured female used all of her powers of resistance, before the act would be rape.

We are not quite able to perceive the force of appellant's objection to proof of the fact that he was under indictment for the rape of Mary Butler in Navarro County. The effect of such testimony was specifically limited in the charge to affecting, if the jury believed it did, the credibility of appellant as a witness.

We have carefully considered the objections to the charge set out in bills of exception Nos. 24, 25, 26 and 27, as well as all of the other bills of exception, and have been unable to find in them any error for which this case should be reversed.

The judgment will be affirmed.

*Affirmed.*

Supplementing the conclusion stated in the foregoing opinion, the writer desires to add the following observations touching bill of exceptions No. 4. In that bill it appears that the prosecuting witness, upon the instant trial, manifested much embarrassment and humiliation by reason of the character and subject-matter of the examination. Appellant desired to inquire of her if it was not a fact that a short time previous, on the habeas corpus trial, under circumstances similar to those prevailing on the present trial, she had testified without embarrassment of any character. According to the bill, it was expected that she would admit that on the former hearing she testified on the same subject-matter in a firm and loud tone of voice without hesitation and without apparent embarrassment. The bill, as drawn, shows that she would have admitted that there was a vast difference between her demeanor on the two occasions. No attempt has been made to give the details of the matter set out in the bill, but in the opinion of the writer, the attempted cross-

examination was a proper one. Thompson on Trials, Vol. 1, Art. 406; Ex Parte Heidingsfelder, 84 Tex. Crim. Rep. 204. It was the appellant's right, we think, to elicit from the witness admissions touching the difference in her demeanor upon the two occasions, she, of course, having the privilege of explaining the reason therefor. Such cross-examination might have tended to discredit the witness in the minds of the jury. The explanation and qualification attached to the bill, however, apparently eliminates the vice in the ruling of the court. In the light of the statements made by the trial judge which, without objection, have become a part of the bill, it is believed that no error is revealed.

MORROW, P. J.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In bill of exceptions No. 4 it is shown that the witness, Bess Hildebrand, testified in detail in favor of the prosecution touching many of the facts and circumstances attending and leading up to the transaction which occurred in Tucker's Lane upon which transaction the conviction rests, and as to what occurred there the State relied upon her testimony alone to establish the essential elements of the offense charged. The bill gives in great detail a resume of the testimony adduced from the witness upon direct examination and describes minutely her demeanor showing that she displayed great embarrassment, hesitation, shed tears, spoke in a tone of voice so low that she could scarcely be heard and generally displayed timidity, shame and humiliation. From the bill it appears but for objection of the State's counsel, sustained by the court to questions propounded by appellant's counsel, witness would have admitted that five days previously, upon a habeas corpus hearing in the same court, touching the same transaction, presided over by the same judge, testimony recorded by the same stenographer, in the presence of many persons occupying the courtroom, in an examination conducted by the same counsel, covering substantially the same matter, she had answered questions promptly, with head erect in a defiant manner, engaged in argument with counsel, showed no timidity, embarrassment, humiliation, shed no tears, but gave her testimony boldly and in a loud tone of voice audible throughout the courtroom, and in fact, in her demeanor and appearance she was entirely self-possessed and in marked contrast with that displayed by her on the present occasion.

In qualifying the bill the learned trial judge states that the

present trial was of undue length; that the witness was vigorously cross-examined for a long period of time by counsel for the appellant, and that under such circumstances she seemed crushed and humiliated. On the original hearing the writer was impressed with the idea that the explanation of the bill of exceptions vitiated its effect. This, upon a more careful examination, does not appear to be so, for the reason that it is manifest that in qualifying the bill the court stated matters which he knew but of which the jury was ignorant. It is competent for the trial judge to testify to relevant facts, (Art. 717, C. C. P., 1925) but extraneous matters stated in qualifying a bill of exceptions, are not available. Benson v. State, 44 S. W. 163. The basis of the complaint in the bill of exceptions is that the jury had no knowledge of the demeanor of the witness on the previous hearing. The conduct of a witness is a matter of weight with the jury in appraising the testimony given by the person. The testimony of the witness in question was in direct conflict with that of the appellant upon the vital issue of the consent of the witness. Upon the credit given her testimony by the jury depended the liberty of the appellant, and perhaps his life. The two were alone on the occasion in question. To discredit her touching the things that transpired at that immediate time his sole reliance was upon her cross-examination. In the right of cross-examination is embraced the right "to have the assistance of counsel for his defense" guaranteed by the sixth amendment to the Constitution of the United States and by the Bill of Rights, Art. 1, Sec. 10, of the Constitution of Texas. Of it, it is said:

"The importance of the right of full cross-examination can scarcely be overestimated. As a test of the accuracy, truthfulness and credibility of testimony, it is invaluable. It is the clear right of the cross-examining party to elicit suppressed facts, which weaken or qualify the case of the cross-examining party." (Thompson on Trials, 2nd. Ed., Vol. 1, p. 420, Sec. 406.)

Upon the present record, as certified in the bill of exceptions, but for the restriction placed by the trial judge upon the cross-examination of the prosecuting witness, she would have admitted the difference in her demeanor which the bill portrays. In his qualification to the bill, the learned trial judge seems to have based his ruling upon the fact that there was some difference in the direct examination and cross-examination of the witness on the present and former occasions. By his ruling we are constrained to conclude that the right of cross-examination was

unduly restricted, under the peculiar circumstances, to the prejudice of the accused.

In his motion for rehearing, appellant re-opens the question of the soundness of the ruling of the trial court and of this court touching bill of exceptions No. 3, which is discussed in the original opinion, appellant insisting that the testimony of bystanders to the effect that there was a difference in the demeanor of the witness on the former and present occasions should have been received in evidence. The writer fails to perceive any plausible theory upon which such testimony of third parties would be available or admissible unless it be to impeach or discredit the prosecuting witness touching the testimony given upon the trial. If the writer comprehends the record, it was the position of the learned trial judge that the proffered testimony was not relevant for any purpose for the reason that it was characterized as a comparison under different conditions. This inference is drawn from the fact that, as shown by bill No. 4, the court upon that ground excluded the proffered admission by the witness of the difference of her demeanor upon the two occasions. It is the conception of the writer that bill No. 3, · as the record now appears, presents but an academic question for the reason that the testimony to which reference is made in the bill is the same as that treated in bill No. 4, save that in the one case the testimony was offered from bystanders and in the other upon the cross-examination of the prosecuting witness. Under no circumstances could she have been impeached by proof of her demeanor by bystanders or third parties when she was ready to admit, as shown by bill No. 4, the difference in demeanor claimed by the appellant. While, as above stated, not necessary to the decision of the case, it is not deemed improper by way of explanation to add that the court does not wish to be understood as indicating that it regards evidence of the difference in demeanor in a witness while testifying upon two separate occasions as available except by way of cross-examination.

The motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*