TIM INGRAM v. THE STATE.

No. 12174. Delivered February 27, 1929.
Rehearing granted June 28, 1929.

The opinion states the case.

*J. Lee Cearly* of Cisco, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment, ten years in the penitentiary.

Mr. Allen, the party alleged to have been robbed, positively identified appellant as one of two men who held him up with guns on the night of March 7, 1928, and took from him about fifty dollars. The defense was an alibi, which was sworn to by a number of the relatives of appellant who located him on the night in question at another and different place.

There are eleven bills of exception. Bills Nos. 4, 5 and 6 will be discussed no further than to say that in bill No. 4 the expected answer to a question asked by appellant and objected to by the State, is not set out and the bill is without merit. In bills Nos. 5 and 6 the expected answers to questions objected to by the State, were plainly not responsive to such questions, and these bills manifest no error.

State witness Munn swore that on the night of the alleged robbery he saw two men coming west toward a car in the road about a quarter of a mile west of Nimrod where Allen's store was; that it was a dark night and witness could not tell whether the men were white men or not; he did not recognize them, and was at no time nearer than one hundred feet from them. Bill of exceptions No. 7 sets up that the court erred under these facts in sustaining objection to the question propounded by appellant to this witness to the effect that if that had been Buford and Tim Ingram, would the witness have recognized them. In as much as the witness had testified that he did not recognize the men he saw, and the further fact that it was a dark night and that he was not near enough to tell whether they were white men or not, it appears to us the answer would have been purely conjectural. This court holds that opinions evidencing that they are guesses or conjectures should always be rejected. Warren v. State, 9 Texas Crim. App. 629; Irvine v. State, 26 Texas Crim. App. 48; Clay v. State, 41 Texas Crim. Rep. 656.

The other bills of exception in the record have been carefully examined, but error has not been found in any of them. The facts seem amply sufficient.

The judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

Upon the trial Mr. Allen, the party alleged to have been robbed, claimed positively to have identified appellant and his brother (B. A.

Ingram), as the parties who committed the offense. The defense was an alibi. Allen claimed that about ten o'clock at night someone called him from his house on the pretense of wanting to purchase medicine; that he went to the store to wait on the pretended customer and that appellant and his brother then robbed witness. It was further shown that although it was claimed this occurred about ten o'clock at night Allen did not notify the officers until next morning, although he had a telephone by which he could have communicated with them and that he made no report that night of the occurrence to his brother-in-law who lived across the road from him. It is further shown that officers made two trips to appellant's store the next day, the first in the forenoon and the second one about two or three o'clock in the afternoon. Appellant complains that he was unduly restricted in his cross-examination of the witness Allen and in the re-direct examination of his own witness Reed, one of the officers who investigated the robbery, which examination, if permitted, would have cast doubt on Allen's testimony given on the trial identifying appellant and his brother as the robbers. This question is presented in bills of exception numbers five, six and nine. They may be considered together. Bill number five shows that Allen testified that about eight o'clock next morning Mr. Boland, one of the officers, got to witness' store first, and that he told Boland he had been robbed and gave him *a description of the robbers.* He was then asked on cross-examination if he told Boland who the robbers were. At this point the State interposed objection as follows:

"We object to this conversation unless we can go into it, and of course we can't; this was the next morning and out of the presence and hearing of the defendant and would not be admissible."

The court seems to have adopted the State's view of the matter and sustained the objection. Of course the State could not have developed the conversation in making out its case in chief, but it by no means follows that appellant could not examine Allen with reference to the conversation had with the officers if it would develop facts casting doubt on his claim at the trial that he identified appellant and his brother as the robbers. The question objected to was: "Did you tell Boland who the robbers were?" The bill recites that Allen would have answered that he did not give *any description* of the parties who robbed him until the next day about two-thirty P. M. The bill itself shows that Allen did testify that he "described the robbers" and the significance of the expected answer escaped us on

original consideration of the case. The answer was not only evasive of the question as to whether Allen disclosed the identity of the robbers, but also would have shown that he never gave any description of the robbers until the second visit of the officers to his store. The record further discloses that the officers knew appellant and his brother and if the officers had been told who the robbers were there would have been no necessity for Allen to describe them.

Bill number six discloses that Allen had testified that Reed (another officer), was at Allen's store in the morning and came back a second time about noon; that Reed was there in the morning to apprehend whoever had committed the robbery, and Allen was asked on cross-examination if Reed had not asked him (Allen) that morning about the robbery. The court sustained objection to this question presumably for the same reason assigned by the State as shown in bill number five. The bill shows that Allen would have testified that "he was talking about having been robbed the night (before) and in that conversation didn't disclose the names of the parties who robbed him." Appellant contends that such admission would have tended to weaken the state's case. Bill number nine shows that while officer Reed was on the witness stand (having been called by appellant) he was asked if during his investigation of the reported robbery Allen told witness who robbed him. Again by sustaining the state's objection appellant was by the court cut off from an investigation of the matter he sought to explore on the examination of Allen. Upon objection being sustained to the question last mentioned the form of it was changed and Reed was asked "Did you find out there that morning who robbed him?" At this point a side-bar remark of the prosecuting attorney, which should not have been made, precipitated a controversy shown in the bill, but not necessary here to notice. Objection from the State was again sustained by the court and the bill certifies that Reed would have testified that. Allen did not inform witness that morning who robbed him the night before, but gave a description of the parties as driving an "out of state" car. It clearly appears from the bills in question that the court was firmly of the opinion that appellant had no right even on cross-examination of Allen to investigate his silence as to the identity of the robbers. Allen may have had a perfectly good explanation for not telling the officers that the robbers were appellant and his brother which explanation the State could have elicited on redirect examination but the court was clearly wrong in curtailing

appellant in his inquiries about the matter. The general rule is very concisely stated in Underhill's Crim. Evidence, Sec. 355, as follows:

"The limits within which either party may cross-examine upon matters not strictly relevant, but which affect the credibility of the evidence, is largely discretionary, and a reasonable exercise, of this discretion in limiting the duration or modifying the method of the cross-examination, or in admitting seemingly immaterial questions tending to explain the motives, opportunities, and powers of observation, the knowledge, memory or recollection, reliability or good faith of the witness, will always be allowed."

Also in Thompson on Trials, Sec. Ed., Vol. 1, page 420, Sec. 406, the same principle is announced in this language:

"The importance of the right of full cross-examination can scarcely be over-estimated. As a test of the accuracy, truthfulness and credibility of testimony, it is invaluable. It is the clear right of the cross-examining party to elicit suppressed facts, which weaken or qualify the case of the cross-examining party."

See also Paulk v. State, 107 Tex. Cr. R. 174, 296 S. W. 588. If appellant could have secured an admission from Allen on cross-examination that he did not disclose to the officers the identity of the parties claimed by him on the trial to have robbed him it might have had much weight with the jury in determining the credit to be given his testimony on the trial positively identifying appellant and his brother as the perpetrators of the crime unless he could have offered some satisfactory reason for withholding such information. Especially does this appear true when it appears from the record that the identification was claimed to have been made on a "cloudy, moonlight night" of parties whose features were partly concealed by a mask of some kind and by the aid of a flashlight only as artificial light. In curtailing appellant in cross-examining prosecuting witness it is thought error harmful to appellant was committed which demands a reversal of the judgment. It may be stated that the questions now discussed were not presented in the companion case, No. 12173, B. A. Ingram v. State, in which judgment has been affirmed and the motion for rehearing overruled.

Appellant's motion for rehearing is granted, the opinion affirming the judgment is set aside and the judgment of the trial court is now reversed and the cause remanded.

*Reversed and remanded.*