TIM INGRAM V. THE STATE.

No. 15044.  Delivered March 16, 1932.

The opinion states the case.

*J. Lee Cearley,* of Cisco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, robbery with firearms; the punishment, five years confinement in the penitentiary.

This is the second appeal of this case.  The former appeal will be found in 113 Texas Crim. Rep., 75, 19 S. W. (2d) 41.

There are no bills of exception in the record.  In the motion for new trial complaint is made of certain rulings of the court relative to different matters, but they are no way verified by bills of exception and therefore cannot be considered.

The only question we can consider is the contention that the evidence does not support the verdict.  The evidence in brief is as follows:  The state's witness, D. L. Allen, testified that he had lived in Nimrod, Texas, since 1903 and had a store and postoffice there and had been engaged in that business since August 21, 1921; that he was engaged in said business on March 7, 1928, and that around 10 o'clock at night on said date he was at his home when he was called out.  He testified that he knew Tim Ingram, the defendant in this case, and also his brother, B. A. Ingram or Buford Ingram, who was commonly called Toots; that he had known them for the last fifteen years prior to the time of this occurrence; that he saw the defendant on the evening of March 7, 1928, and also his brother, Toots, on that occasion; that when he was called from his house to the store someone hollered in front of his house that they wanted to get some medicine; that he got up and dressed and the person outside said they would go on down to the store and wait for him; that as he neared the store he saw someone standing on the porch near the store window and as he approached the porch, this person said, "Stick 'em up"; that Buford Ingram was the one who told him that; that he knew him at that time and when the said Buford Ingram told him to "stick 'em up" he

had a long barrel gun in his hand and after Buford Ingram had given him these orders, Tim Ingram came from around the east side of the store and repeated, "stick 'em up"; that the appellant had a pistol in his hand; that Buford Ingram said for him to open the store door; that the door was locked and he unlocked it because he was afraid they would shoot him if he didn't do so; that when he unlocked the door and walked in he turned and asked them what they wanted; that both the appellant and his brother had followed him into the store and Buford Ingram kept his gun in his ribs all the time; that they told him to get around there and open the safe; that he then opened the safe door and they told him to get the money out; that he got his personal money in a little drawer in the safe, which amounted to about $30, and he set the little drawer upon the postoffice desk and Buford reached and got it; that they then cursed him and told him to get it all and he got the postoffice money, which amounted to about $16, and laid that down on the desk and Buford picked it up; that the appellant was at that time back in the aisle with his gun in his hand pointed towards the witness; that appellant's brother then punched him with his gun and said to get it all; that they got somewhere between $2.50 and $5 from his pockets; that they got around $50 from him altogether. He testified further that at the time they robbed him they had handkerchiefs over their faces but they just had them over their noses and he could see the upper portion of their face and forehead; that he had known each of them about fifteen years and during that time had occasion to carry on conversations with each and both of them; that he was familiar with their voices, with their build, their faces, and the color of their eyes and their appearance; that after they had gotten all the money out of the postoffice, they made a dash for the door.

The appellant's defense was an alibi. The testimony of the state's witness, if believed by the jury, makes out a case against appellant and we are not authorized to disturb their verdict.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.