David Randall DILLARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 44193.

Court of Criminal Appeals of Texas.

Dec. 14, 1971.

Rehearing Denied March 29, 1972.

Gerry O'Malley Walsh, Thomas D. Prichard, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder with malice. The jury assessed the punishment at fifteen years.

The sufficiency of the evidence is not challenged.

At approximately midnight March 10, 1968, the appellant and Louis Adrian Teal, both white males, "dated" two Negro prostitutes. The deceased, Wanda Martin, engaged Teal in sexual intercourse while at the same time appellant and Ilene Alexander were so engaged. The acts took place in a white 1959 Chevrolet driven by Teal. Three witnesses, including Ilene Alexander, testified to these events. Appellant and Teal left the area and returned later

around 2:00 or 3:00 a.m. This time the appellant "dated" the deceased and Teal left the car to talk with other prostitutes. Suddenly Teal ran to the car, got in and drove away with the deceased still in the car.

Around 7:00 a.m. of the same morning Cordia Anderson found the body of Wanda Martin across the street from her house. Officer Andrew Belovsky of the Houston Police Department testified that he went to the scene pursuant to a call and found the deceased wearing a pair of go-go boots, a short skirt, a sweater covering her head, and a wig on the ground near her head. Wanda Martin was dead when Officer Belovsky arrived. Officer W. C. Romund testified that he arrived around 7:30 a.m., and found the body cold and stiff. Dr. Joseph Jachimczyk, Chief Medical Examiner for Harris County, testified that an autopsy performed on the body of the deceased revealed that she died from two .22 caliber gunshot wounds in the head.

Allen Milton Hobbs testified that both appellant and appellant's brother told him that appellant had killed a Negro prostitute. Hobbs further testified that about a week before May 31, 1968, he was in an automobile driven by Teal with appellant in the right front seat. Hobbs and two others were in the back seat. Appellant had Teal stop the car and appellant shot five or six times at two Negro men. Later the same night (or early morning) appellant again had Teal stop the car and appellant shot twice into the stomach of a Negro man standing by the side of the car.

On September 17, 1968, the Juvenile Court of Harris County conducted a hearing, waived jurisdiction of the appellant (who apparently was sixteen years old at the time), and certified its action to the Criminal District Court under the provisions of Article 2338–1, Section 6, Vernon's Ann.Civ.St. The appellant filed a timely notice of appeal. On October 28, 1968, the 176th Judicial District Court con-

ducted an examining trial and bound the appellant over to the grand jury. An indictment was returned on October 31, 1968. The Court of Civil Appeals in Dillard v. State, 439 S.W.2d 460 (Tex.Civ.App.1969, writ ref'd n.r.e.), held the cases to be moot and all previous orders were set aside since appellant became seventeen years of age while his appeals were pending.[1]

■ In his first ground of error the appellant contends the trial court erred in overruling his motion to set aside the indictment because the waiver of jurisdiction and order of certification were moot and, hence, the indictment was invalid. We understand appellant's argument to be that the Court of Civil Appeals' holding the cases to be moot and setting aside all previous orders effectively voided the waiver and certification of the juvenile court so that the grand jury was without jurisdiction to indict the juvenile. We do not so construe this as the meaning of the Court of Civil Appeals' holding. That Court said, "[t]he juvenile court has no *further* power to act in these cases." (Emphasis added) 439 S.W.2d at 462. It did not hold that the *previous orders* of the juvenile court were void. Appellant's first ground of error is without merit.

■ In his second ground of error appellant contends the trial court erred in overruling his motion to set aside the indictment for the reason that in his appeal of the juvenile court's waiver and certification he asserted that the juvenile court had not complied with four of the statutory procedural requirements and the Court of Civil Appeals did not hold the waiver and certification valid. In Buchanan v. State, 453 S.W.2d 479, we upheld the indictment of a sixteen year old where "all the statutory procedural requirements had been complied with before and upon the transfer of his case from the Juvenile Court prior to return of the indictment." Id. at 480. Since the Court of Civil Appeals never held the appellant's certification to be *invalid* we must accept it as

---

1. Appellant apparently was not seventeen years old when the indictment was returned.

valid. An appeal in juvenile cases lies with the Court of Civil Appeals, not with this Court. Article 2338–1, Section 21, V.A.C.S.; In re Garcia, 443 S.W.2d 594 (Tex.Civ.App.1969).

■ Appellant's third ground of error contends the trial court erred in denying appellant an examining trial. The contention is without merit because the record shows appellant stipulated that an examining trial was held prior to the indictment.

■ ■ In his fourth ground of error the appellant complains of the grand jury's lack of knowledge of the procedure if they failed to indict him. Appellant's claim is that upon failure to indict him he would have automatically been remanded to juvenile jurisdiction for rehabilitative measures until he reached 21 years of age. Article 2338–1, Section 6(k), V.A.C.S., provides:

> "If the child's case is brought to the attention of the grand jury and the grand jury does not indict for the offense charged in the complaint forwarded by the juvenile court, the district court or criminal district court shall certify the grand jury's failure to indict to the juvenile court. Upon receipt of the certification the juvenile court *may* resume jurisdiction of the child." (Emphasis added.)

Since the juvenile court "may" resume jurisdiction it is discretionary and not automatic. Further, the question did not arise since the grand jury did indict the appellant. We will not review the mental processes of the grand jurors. His fourth ground of error is without merit.

■ In his fifth ground of error the appellant complains that the court erred in admitting into evidence two subsequent extraneous offenses. An accused should be tried on the merits of each case, and proof of extraneous crimes is not admissible if it could only show that he was a criminal generally. See 1 Branch's Ann.P.C., Section 188, pp. 202–203, and cases there cited.

In 4 Branch's Ann.P.C.2d, Section 2538, page 870, is found:

> "Proof of other offenses is admissible if such proof is a part of the res gestae of the alleged offense for which defendant is being tried, or if it tends to show intent when intent is an issue, or serves to prove identity when identity is an issue, or when it is sought to show the guilt of defendant by circumstantial evidence and such proof of another offense connects or tends to connect the defendant with the alleged offense for which he is being tried, or when it tends to defeat the defensive theory."

■ In the present case the extraneous offenses were admitted for the purpose of identity, a recognized exception to the general rule. Owens v. State, Tex.Cr.App., 450 S.W.2d 324. If, however, the testimony of the State leaves no question as to identity, proof of an independent crime is not admissible for that purpose. Hafti v. State, Tex.Cr.App., 416 S.W.2d 824. Eyewitnesses positively identified the appellant as being present earlier in the evening near the hotel and having sexual intercourse with one of the witnesses while his companion had sexual intercourse with the deceased. He was also identified as the person "dating" the deceased later that night and as being present in the automobile when the deceased was abducted. However, no witness testified that he saw the killing. The only evidence connecting the appellant with the actual killing of the deceased was the witness Hobbs who testified:

> "He said him and Louis Teal picked a Negro prostitute up and was going to rob her and they carried her out and got in a fight, started fighting and the gun went off, or they shot her or something, and then Dave Dillard (appellant) got out and finished killing her."

Hobbs repeated substantially the same testimony several times. He was the same witness who testified regarding the subsequent offenses. On cross-examination the appellant's attorney attacked the credibility of Hobbs and had him admit that at a prior hearing in the juvenile court he stat-

ed that the appellant's brother had told him that appellant killed the Negro prostitute. On redirect Hobbs stated that both appellant and appellant's brother told him this.

■ Although not urged, another purpose for the admission of such testimony will be discussed. Where the accused has threatened or shown a feeling of ill-will and animosity towards all parties of one class then these threats or offenses may be admitted into evidence even though they show extraneous offenses. See Wheeler v. State, 132 Tex.Cr.R. 291, 103 S.W.2d 768; Paulk v. State, 107 Tex.Cr.R. 174, 296 S. W. 588; Martin v. State, 107 Tex.Cr.R. 151, 295 S.W. 1098; Taylor v. State, 44 Tex.Cr.R. 547, 72 S.W. 396; Mathis v. State, 34 Tex.Cr.R. 39, 28 S.W. 817; Miller v. State, 31 Tex.Cr.R. 609, 21 S.W. 925. Cf. Lawrence v. State, 128 Tex.Cr.R. 416, 82 S.W.2d 647, and Russell v. State, 84 Tex.Cr.R. 245, 209 S.W. 671.

In the present case the appellant, a white man, was convicted for the murder of a Negro. The witness Hobbs after objection testified:

"A. We was coming toward town. We was on the North Main exit, and right there at the Weingarten's parking lot there was two Negro boys, I guess they was about twenty-five, they was men, and they was walking toward North Main and we was coming up toward North Main on the exit, and David said stop, there's two Negroes. So we stopped and David said which way is North Main, and they said North Main is right there, which way are you going, and he said we are going this way and he started shooting at them, and they fell on the ground and then he shot about three times, and we took off and turned right on North Main and they got up and was running back across towards the store, and he shot two or three more times.

"Q. He shot a total of five or six times at these two Negro men?

"A. Yes, sir."

Hobbs further testified, again after objection, that on the same night:

"A. We was coming toward town and was on the exit and we turned right. Just as we turned there was a big Negro man walking towards the freeway and David said stop, and we stopped right there, and when we stopped he was right there by the side of the car and David said come here. He walked right up to the window and he shot twice right into his stomach."

According to the testimony these two extraneous offenses occurred some two or two and a half months after the offense for which the appellant was on trial.

We find this testimony shows ill-will and animosity of the appellant towards members of the Negro race. The deceased was a member of this race and the testimony. of these extraneous offenses was admissible on the issue of malice toward the deceased as a member of the Negro race.

The trial judge charged the jury to consider the testimony only for the purpose of identity.

■ There was no direct evidence that the appellant killed the deceased. The evidence of the extraneous offenses served to prove the appellant guilty by circumstantial evidence. It showed malice toward the Negro race, and also tended to prove identity. It was admissible for the purpose of malice, a main issue in a case of murder with malice. A charge limiting the jury's consideration is not required where admissible to prove a main issue in the case. Moss v. State, Tex.Cr.App., 364 S.W.2d 389; Cox v. State, 166 Tex.Cr.R. 587, 316 S.W.2d 891; Cantu v. State, 141 Tex.Cr.R. 99, 135 S.W.2d 705, cert. denied 312 U.S. 689, 61 S.Ct. 617, 85 L.Ed. 1126. Even if it could be said that the court erred in ad-

mitting the testimony for the purpose of identity, it was not error to admit it for the purpose of showing malice, a main issue in the case, and the appellant could not be harmed by its admission for the more limited, although erroneous, reason.

The appellant also contends that the testimony of Hobbs as to these particular extraneous offenses was inadmissible because he was an accomplice witness as to those offenses and there was no corroboration of his testimony.

We have no rule that prevents an accomplice witness from testifying. The record does not show that Hobbs was an accomplice witness. It' shows that he was present during the extraneous offenses but does not show that he by act, word or gesture aided or encouraged in the commission of the offense. See McClelland v. State, Tex.Cr.App., 373 S.W.2d 674; Taylor v. State, 179 S.W. 113; Schribe v. State, Tex.Cr.App., 35 S.W. 375.

The record contains no reversible error. The judgment is affirmed.

ODOM, J., not participating.