[No. 2391.]

Louis Davidson *v.* The State.

1. Perjury—False Swearing.—The authority of a county clerk to require of an applicant for a marriage license an affidavit of the capacity of the contracting parties to enter into the marriage relation, in order to protect

himself from the operation of Article 2841 of the Revised Statutes, prohibiting the issuance of marriage licenses under certain circumstances of age and of non-consent of parents or guardians, is derived from Article 1149 of the Revised Statutes, which confers upon him the general power to "administer all oaths and take depositions." Such an affidavit, being extra-judicial, will not support an assignment for perjury against the affiant, but will support an assignment for false swearing, as that offense is defined in Article 196 of the Penal Code. The perjury assigned in this case was the false statement of the appellant, as a witness on the trial of one B. for false swearing, in making the affidavit upon which the latter's marriage license was issued. See the opinion *in extenso* for an elaboration of the question, holding the assignment sufficient, and for a discussion of the difference between perjury and false swearing.

2. SAME.—The perjury assigned was that, upon the trial of B. for false swearing, the question at issue being whether one C. R. was of the age of eighteen years, the defendant testified that the said C. R. "was a great big girl thirteen years ago; that she had grown but very little since he became acquainted with her thirteen years ago; that he picked cotton with her thirteen years ago, when she was a great big girl—big enough to pick cotton." It was objected by the defense that the matter assigned as perjury was immaterial to the issue on trial. The rule is that, if the statement tends even circumstantially to prove the issue, it is material. It is not necessary that the particular fact sworn to shall be immediately material to the issue, but it must have such a direct and immediate connection with a material fact as to give weight to the testimony on that point. *Held* that, under the rule, as the perjury assigned tended to strengthen the affidavit of B., it was material to the issue on trial in B.'s case.

3. SAME—PRACTICE—EVIDENCE.—The State was permitted, over the objection of the defendant, to prove by the attorney who defended B. on the trial in which the perjury was charged to have been committed, his reason and purpose in placing the defendant upon the stand as a witness on that trial. *Held*, that the evidence was properly admitted. Article 189 of the Penal Code provides that "a false statement made through inadvertence, or under agitation or by mistake is not perjury," and it was proper to permit the State to negative those conditions by the attorney who introduced the witness.

4. SAME—JUDGMENT—CHARGE OF THE COURT.—"The judgment rendered in the judicial proceeding wherein the perjury was alleged to have been committed was properly admitted in evidence as inducement, though not as proof, of the perjury. It was, however, the duty of the trial court, in its charge to the jury, to properly limit the purpose of such evidence; the rule being that, whenever extraneous matter is admitted in evidence for a specific purpose incidental to, but which is not admissible directly, to prove the main issue, and which might tend, if not explained, to exercise a wrong, undue or improper influence upon the jury as to the main issue, injurious and prejudicial to the rights of a party, then it becomes the imperative duty of the court, in its charge to the jury, to so limit and restrict it that such unwarranted results can not ensue; and

a failure to do so will be radical and reversible error, even though the charge be not excepted to.

5. SAME.—The materiality of matter assigned as perjury is for the determination of the court, and it is error if it be left to be ascertained by the jury. But this objection, urged in this case, is not sustained by the record.

APPEAL from the District Court of Williamson. Tried below before the Hon. A. S. Walker.

The conviction in this case was for perjury, and the penalty assessed against the appellant was a term of seven years in the penitentiary. The second head note states the matter assigned as perjury.

The State first introduced in evidence the minutes of the January term, 1886, of the district court of Williamson county, Texas, showing the indictment number 2535, charging Thomas Bratton with the offense of false swearing, which indictment was predicated on an affidavit made by the said Bratton to obtain a marriage license, in which he declared that he was over twenty-one years of age, and that Catherine Ross, to whom he desired to be united in marriage, was over eighteen years of age, and that there was no legal impediment to the marriage of the said Bratton and the said Catherine Ross, the parents of the latter having consented thereto. The State next introduced in evidence the judgment in the case of The State of Texas v. Thomas Bratton, tried under the foregoing indictment.

Thomas Ross was the first witness called to the stand by the State. He testified that he and his wife Harriet, whom he married in 1868, had lived since the conclusion of the war between the States on Gilleland's creek, three or four miles west of Manor, in Travis county, Texas. Twelve or thirteen years ago witness and his wife lived on Mr. Jordan's place, when defendant became acquainted with their daughter, Catherine, whom he has known well ever since. Witness and Harriet were married in June, 1868, and Catherine was born on the tenth day of February, 1869, at Mr. Giles's place on Gilleland's creek, and, consequently, was seventeen years old in February, 1886. She was the first child born to witness and his wife Harriet. The witness could not now remember how large a girl Catherine was thirteen years ago. She was not considered large for her age when she was three or four years old. She was not large enough to pick cotton thirteen years ago. Catherine picked no cotton when she

was four years old, that the witness knew of. Witness had but two children thirteen years ago. Catherine picked no cotton, so far as the witness knew, until five or six years ago, but up to that time worked inside of the house. Catherine was a small child thirteen years ago. She has grown a great deal since then, and is now a grown woman. Witness did not hear the defendant's testimony on the trial of Thomas Bratton at the last term of court.

Cross examined, the witness said that he gave a cotton picking on Jordan's place in 1873. He invited a great many people, and among others, old man Louis Davidson and his family. The defendant attended, and was then a good sized boy—big enough to pick cotton. A large number of young people, boys and girls, were in attendance. Catherine, then a bright, playful child, but quite small, was there. She was then not more than waist high to witness, as well as the witness could recollect. The cotton picking was given in October, 1873. If Catherine was in the cotton field on that occasion the witness did not know it. She, however, picked no cotton on that day, and was not large enough to perform such labor. The witness could not say that he was with his daughter throughout the day of the picking, and of course could not say that she did not remove some cotton from the bolls, but she was not large enough to make a hand in the cotton patch.

Harriet Ross testified, for the State, that she and the witness, Thomas Ross, were married in January, 1868, by the Reverend Thomas Brown. Their daughter Catherine was born February 10, 1869, and, consequently, was seventeen years old in February, 1886. Catherine was four years old thirteen years ago, and was then under waist high to a grown person of average height. She was not a fast growing child, but was heavy set, though not tall. Catherine had grown a great deal during the last thirteen years, and is now much larger than she was at the time of the cotton picking season of 1873. Witness had known the defendant ever since 1873, since when he had lived in the witness's neighborhood, and was well acquainted with Catherine.

Cross examined, the witness said that she could not undertake to state Catherine's exact height in 1873. The girl had grown a great deal within the last few years, and had been out of short dresses but three or four years. Quite a number of people attended the cotton picking given by witness's husband in 1873.

The witness could not recall the names of all the people present, but she knew that old man Louis Davidson and his family were there. The cotton field was near the house, but not just around it. Witness did not go to the cotton field, as she and some of her sisters were at the house busy in the preparation of dinner. Witness could not now remember whether dinner was cooked inside or outside of the house. Catherine was then the older of the witness's two children, and had charge of the other child, then about two years old. Catherine and the other child spent the day of the cotton picking running about the place with other children. The witness was a negress of no education, was born in Virginia, and removed to Travis county, Texas, with her owner, Mr. Maxwell, when a child, and has resided in that county ever since. She was old enough to appreciate the close of the Confederate war, but could not say how long it was afterwards that she was married to Thomas Ross. Tom Bratton stole Catherine, and that made the witness mad. She did not know whether Catherine wanted Tom Bratton or not. Witness did not want Catherine to marry Bratton, because he had no reputation.

Catherine Ross testified, for the State, that she had known the defendant since her earliest recollection. She could not remember the cotton picking on Jordan's place. She had been told her birth at its every recurrence since she could recollect, and was now seventeen years old.

Cross examined, the witness said that she both told and wrote Tom Bratton that she was eighteen years old. She did not want Tom Bratton sent to the penitentiary. She believed that she was eighteen years old, though her parents always told her otherwise. Witness's parents did not tell her what to testify on this trial. Witness had been told that she was born on the Giles place. She had picked cotton, but could not now recall her first service in the cotton patch. She picked cotton in 1884 and 1885. She could not say whether she picked cotton in 1882 or not. She had no recollection of picking cotton on the Jordan place in 1873, or at any other time. She remembered picking cotton with the defendant in 1885.

J. W. Lane testified, for the State, that he was the clerk of the district court of Williamson county, in January, 1886, and as such officer administered the oath to the defendant as a witness in the case of the State of Texas v. Thomas Bratton. Witness's attention was called directly to the defendant at the con-

clusion of his testimony. Witness remembered distinctly that the defendant testified on that trial as follows: "She was a good, large girl when I picked cotton with her in the field thirteen years ago."

John T. Olive testified, for the State, that he was present in the court house of Williamson county when the case of the State of Texas v. Thomas Bratton was tried, in January, 1886, and heard the defendant testify as a witness upon that trial. He testified that he picked cotton with Catherine Ross thirteen years before, and that she was then about as big a girl as she was in January, 1886, having grown but very little in the said thirteen years. Catherine Ross, who was present on the trial of Bratton, in January, was present now. She would perhaps weigh a few pounds more than she did in January, but otherwise had not grown. On his cross examination, the witness said he thought defendant's language on the stand was that Catherine looked to him about as large thirteen years ago, as in January, 1886. The defendant was a witness for Bratton. On his cross examination, he fixed the time of cotton picking in 1873, and said Catherine looked to him as large then as at Bratton's trial.

The testimony of this witness was corroborated in substance by two or three other witnesses for the State, among them Mr. R. A. John, who testified that, as the counsel for Bratton on his trial, he put the defendant on the stand to prove that Catherine Ross was a large girl several years prior to the trial and had received company for several years. Defendant so testified, locating the cotton picking in 1873, when, he said, she looked to him about as big as on Bratton's trial. Defendant did not testify as though he was agitated. The State closed.

Mose Fraction testified, for the defense, that he attended Ross's cotton picking on Jordan's place in 1873. He saw the defendant and Catherine Ross among the large number of people in the field. He could not say that Catherine picked any cotton, but she was in the cotton patch running around. The cotton pickers were classified. The old folks formed one class, the youths and maidens another class, and the children the third class. Defendant and Catherine were in the crowd composing the third class. Catherine was then fat and round—almost as broad as she was tall. She has grown in height since and now appears to be a grown woman.

Cross examined, witness said that Catherine was quite a

smart little girl in 1873, but witness could not tell how old she then was. She was large and bulky, but never was tall, and in 1873 was not over two and a half or three feet in height. Defendant was then a stripling boy. He was now married and had two children, but witness did not know his age.

Frank Robertson testified, for the defense, that he attended Tom Ross's cotton picking on the Jordan place in 1873, and saw defendant and Catherine Ross in the patch during the evening. The pickers were classified into the three gangs. The third gang included the children, who were at liberty to pick cotton or to play, as they pleased. Defendant and Catherine were with the children's gang when witness saw them. Catherine was then about waist high to witness, and was heavy set and solid. She is now a grown woman.

The motion for new trial raised the questions discussed in the opinion.

*Sheeks & Sheeks* and *Fisher & Townes*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. In order to obtain a marriage license, one Thomas Bratton made an affidavit, which was required of him by the county clerk, that his *fiancee* was eighteen years of age and that her parents had given their consent to the marriage. It turned out that neither of these sworn statements was true, and that the maiden was in fact only seventeen years of age. A prosecution was instituted in a very short time against Bratton by indictment based upon this affidavit, charging him with "false swearing." Bratton defended and procured this appellant to appear as a witness in his behalf. Appellant's testimony, in substance, was that Catherine Ross (the female in question) "was a great big girl thirteen years ago; that she had not grown but very little since he became acquainted with her thirteen years ago; that he picked cotton with Catherine Ross thirteen years ago, and that she was then a good sized girl, big enough to pick cotton." Notwithstanding this testimony Bratton was convicted of "false swearing," and his punishment was assessed at two years confinement in the penitentiary. Appellant was then indicted for "perjury" in testifying as aforesaid on Bratton's trial, and, having been convicted and

sentenced to seven years in the penitentiary, he appeals to this court.

It is contended that the county clerk had no authority to take Bratton's affidavit in the premises, and that Bratton committed no offense in making it, and that if no offense was committed by Bratton then appellant's testimony on the trial of Bratton could not support an assignment of perjury. Had Bratton been indicted for perjury there might have been some plausability, if not reason, in this position, inasmuch as perjury can only be assigned upon an "oath or affirmation legally administered under circumstances in which an oath or affidavit is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice." (Penal Code, Art. 188.)

A county clerk is the only officer authorized by law to issue marriage licenses, and the same Article which confers that authority upon him also empowers him "to administer all oaths and affirmations, and to take affidavits and depositions, to be used as provided by law in any of the courts." (Rev. Stat., Art. 1149.) He is also generally empowered to take affidavits. (Rev. Stat., Art. 7.) He is expressly prohibited from issuing a license to marry without the consent of the parents or guardians of the parties applying, unless the parties so applying shall be, in the case of the male twenty-one years of age, and in the female eighteen years of age. (Rev. Stat., Art. 2841.) But the law nowhere requires or authorizes the taking of an oath or affidavit of the age of the applicant in cases where the clerk is in doubt upon the subject. His authority to require such oath and affidavit for his own protection is, if at all, derived solely from his general power "to administer all oaths and take affidavits." Such being the case, it may well be questioned whether, under our law, an affidavit so made would be a legitimate basis for an assignment of perjury. Mr. Desty, in his American Criminal Law, says perjury may be assigned on a false oath taken before a surrogate to obtain a marriage license. (Am. Crim. Law., sec. 75g.) Mr. Bishop, on the other hand, says: "In England a false oath taken before a surrogate to deceive him into granting improperly a marriage certificate, though not perjury, is a criminal misdemeanor." (2 Bisb. Crim. Law, 7 ed., sec. 1029.) In Ohio, perjury can be assigned upon such an oath. (Call v. The State, 20 Ohio St., 330; 25 Ohio St., 21.)

Our opinion is that it would not be a legitimate basis for an assignment of perjury under our statute, it being only a volun-

tary affidavit. Not being for use in any of the courts, such an affidavit would be extra-judicial, and an extra-judicial oath lays no foundation for a prosecution of perjury. (U. S. v. Babcock, 4 McLean, 113; 2 Bish. Crim. Law, 7 ed., sec. 1027.) And it seems clear that no oath whatsoever, taken before persons acting merely in a private capacity, or before those who take upon them to administer oaths of a public nature without legal authority for their so doing, or before those who are legally authorized to administer some kinds of oaths, but not those which happen to be taken before them, or even before those who take upon them to administer justice by virtue of an authority seemingly colorable, but in truth unwarrantable and merely void, can ever amount to perjury in the eye of the law, because they are of no manner of force, but are altogether idle. (1 Hawk. P. C. Ch., 69, sec. 4). In Fourth Blackstone's Commentaries, 137, it is said: "It is much to be questioned how far any magistrate is justifiable in taking a voluntary *affidavit* in any extra-judicial matter, as is now too frequent upon every petty occasion, since it is more than possible that by such idle oaths a man may frequently in *foro conscientiæ* incur the guilt and at the same time evade the temporal penalties of perjury."

But the indictment against Bratton was not for perjury, but for *false swearing*—a distinct specific offense under our code, which provides that, "If any person shall deliberately and willfully, under oath or affirmation legally administered, make a false statement by a voluntary declaration or affidavit which is not required by law or made in the course of a judicial proceeding, he is guilty of false swearing, and shall be punished by imprisonment in the penitentiary not less than two nor more than five years." (Penal Code, Art. 196.) The distinction between perjury and false swearing is this, viz.: if the false statement be made in an oath or affidavit "required by law," or made in "the course of a judicial proceeding," the offense is perjury; if the false voluntary oath or affidavit is "not required by law or made in the course of a judicial proceeding," then it is false swearing. (Langford v. The State, 9 Texas Ct. App., 283.) Most clearly the clerk had authority to administer the oath, and a written declaration, or affidavit, as it is called, of Bratton, was a legitimate subject upon which to assign a charge of "false swearing," though not of perjury.

The next question raised by appellant is that the matter assigned against him, as set out above, is not material; in other

words, that the statements of defendant on Bratton's trial, as to the size of the girl Catherine Ross, and the fact that she picked cotton thirteen years ago, was immaterial to the issue being tried—that issue being whether the girl was eighteen years old at the time Bratton made the affidavit to that effect.

The rule is that "a party not only commits perjury by swearing falsely and corruptly as to the fact which is immediately in issue, but also by swearing falsely and corruptly as to material circumstances tending to prove or disprove such fact; and this without reference to the question whether such fact does or does not exist. It is as much perjury to establish the truth by false testimony as to maintain a falsehood by such testimony." (Bradberry v. The State, 7 Texas Ct. App., 375.) "If the statement tend even circumstantially to the proof of the issue, it will be deemed material." (2 Arch. Crim. Prac. and Plead., 8 ed., p. 1727.) "Testimony tending to affect the verdict of the jury, or extenuating or increasing the damage, and thus influencing the judgment of the court, is material. It is not necessary that the testimony should of itself be sufficient to sustain the issue in the case in which the witness is called, or that it should change the mode of punishment if in a criminal case. If it is pertinent to the issue, it is sufficient." (King v. Rhodes, 2 Ld. Raymond, 887.) "In the case of the State v. Hathaway (2 Nott. and McCord, 118), it was said that to constitute perjury it was not necessary that the particular fact sworn to should be immediately material to the issue, but it must have such a direct and immediate connection with a material fact as to give weight to the testimony on that point."

Mr. Bishop says: "The true test would seem in reason to be whether the evidence could have properly influenced the tribunal. * * * Where the incidental matter is calculated to incline the jury to give a more ready credit to the substantial part, it will sustain a conviction for perjury if willfully false." (2 Bish. Crim. L., 3 ed., secs. 1036, 1037.) It is evident that the testimony tended to strengthen Bratton's affidavit that the girl was eighteen years old.

A bill of exceptions was saved because the State was allowed to prove by the witness John, who had as attorney defended Bratton on his trial, what was witness's object and purpose in calling this defendant to testify as a witness in that case. The reason and purpose, as well as the admissibility of the evidence is, we think, apparent. Our code declares that "a false state-

ment made through inadvertence or under agitation or by mistake is not perjury." (Penal Code, Art. 189.) Now, if from information derived previously from the witness the attorney was induced to call him upon the stand to swear to the facts to which he did testify, it stands to reason that such statements, when thus sworn to, could not have been made through inadvertence nor been the result of agitation or mistake.

Another bill of exceptions was taken to the reading in evidence by the State, over objection, of the record including the judgment in the Bratton case. It is contended that this evidence was both inadmissible and prejudicial to defendant's rights. There was no error in admitting the evidence. Mr. Wharton says, "a prior judgment may be also admissible as part of the evidence on which the case for or against the defendant may be made out. This is eminently the case in proceedings for perjury, in which the record of the trial at which the alleged perjury was committed is admissible as inducement, though not to prove the perjury." (Whart. Crim. Ev., 8 ed., sec. 602a; 1 Greenl., 13 ed., section 539.) But, having admitted the evidence properly, we look in vain for any instruction from the court explaining the object and purposes of its admission, and limiting the purposes for which it could legally be considered by the jury. They should at least have been told it was not to be considered as proof of the perjury. Without some such instruction the jury may have given it weight as evidence going to establish the perjury, and doubtless they did so.

It is a general rule that whenever extraneous matter is admitted in evidence for a specific purpose incidental to, but which is not admissible directly to prove the main issue, and which might tend, if not explained, to exercise a wrong, undue or improper influence upon the jury as to the main issue, injurious and prejudicial to the rights of a party, then it becomes the imperative duty of the court in its charge to so limit and restrict it as that such unwarranted results can not ensue; and a failure to do so will be radical and reversible error even though the charge be not excepted to. Thus, "where evidence of an extraneous crime is admitted for the purpose of showing intent or motive in the commission of the act alleged against him, it is the duty of the trial court, in charging the jury, to explain the purpose for which it was admitted and to limit its effect to this purpose alone." (Long v. The State, 11 Texas Ct. App., 381; McCall v. The State, 11 Texas Ct. App., 353; Kelly v. The State,

18 Texas Ct. App., 262, Francis v. The State, 7 Texas Ct. App., 501.) Many illustrations might be given, but it is deemed unnecessary. In this instance we think it is plainly apparent that the jury were in all probability unduly and improperly influenced by the evidence; because not limited and restricted in their consideration of it.

The materiality of the matter assigned as perjury is for the determination of the court, and it is error if it be left to be ascertained by the jury. (Donohue v. The State, 14 Texas Ct. App., 638; Jackson v. The State, 15 Texas Ct. App., 579.) But this objection urged by appellant's counsel to the charge is not borne out by the record.

For the error in the charge as above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 20, 1886.