Nannie J. Sauls v. Chicago, Rock Island & Texas Railway
Company et al.

Decided May 21, 1904.

**1.—Fellow Servants—Grain Company.**

A millwright in the employ of a grain company and another employe of the company who looks after the cars that are brought into the elevator building to be unloaded, neither of them having any control over the other, are fellow servants, and the company is not liable for injury to the one resulting from the negligence of the other.

**2.—Railroads—Spur Track to Grain Elevator.**

Where a railroad company builds for a grain company a spur track to and into an elevator building, but the grain company owns and controls the track and the railway company has no connection with it other than building it, the railroad company is not liable for an injury to an employe of the grain company resulting from his being struck on the track by a moving car within the elevator building.

**3.—Contributory Negligence—Assumed Risk.**

Where an employe of a grain company went upon a railway track inside the elevator building at a time when he knew cars were being kicked down the track and the noise of the machinery rendered it difficult or impossible for a warning to be heard, he assumed the risk of being struck by the cars.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

*Bomar & Bomar, F. E. Albright,* and *R. E. Beckham,* for appellant.

*West, Chapman & West, N. H. Lassiter,* and *Robt. Harrison,* for appellees.

SPEER, Associate Justice.—Nannie J. Sauls, widow, brought this action against the Chicago, Rock Island & Texas Railway Company and the J. Rosenbaum Grain Company, to recover damages for the death of her husband, alleging the same to have resulted from the negligence of said companies. From a judgment based upon the verdict of a jury in response to a peremptory instruction, to find for the defendants, she has appealed.

We are of the opinion that under the circumstances of this case a peremptory instruction was proper. The undisputed facts show that the deceased, R. M. Sauls, was a millwright in the service of the J. Rosenbaum Grain Company, and that his duties carried him to every part of that company's elevator building. He had been in its service several months, and for about three weeks prior to his death had been engaged in the capacity above indicated. In attempting to go across a railroad track within the elevator building, from the platform on one side to the platform on the other, an empty car standing upon the track was kicked against and over him, resulting in his death. The person in charge of the work of placing these cars within the building to be unloaded, one Harmsley, was also an employe of the J. Rosenbaum Grain Company, and neither the deceased nor said Harmsley had any authority or control whatever over the other. The method by which

the loaded cars were placed within the elevator building was for an employe to go out on the spur track and loosen the brake of the cars wanted, and with a pinch bar to start them down the track, when they would, of their own inertia, run into the building, where the momentum thus acquired would be sufficient to kick out the empty cars then standing on the track ready to be removed. It was in this manner the empty car which killed the deceased was put in motion.

If Harmsley, who is shown to have been on the loaded cars which run into the building at the time in question, ever gave any warning by calling out, as was his duty to do, the deceased probably never heard it, since the noise of the running machinery in the building was great. There was no watchman, rail or other guard at the place where deceased was run over, which is shown to have been a crossing in regular use by the employes of the grain company. It is doubtful, under the evidence, whether the deceased, situated as he was immediately prior to the accident, could have seen a car approaching from the direction from which those in charge of Harmsley came. This railroad track through the elevator building, and for a distance outside, was owned and controlled wholly by the J. Rosenbaum Grain Company, and the Chicago, Rock Island & Texas Railway Company had no connection whatever with the same, further than that it built the road for the grain company. Neither the deceased nor any of the other employes of the J. Rosenbaum Grain Company was in any sense in the service of the railway company.

We think it clear that the railway company is in no sense liable to appellant's suit. It neither owns nor operates the road or track upon which her deceased husband was killed. It is not a case of attempting to delegate to another a duty which the railway company itself owes to the public.

We think it also equally clear that the grain company is not liable, because whatever negligence there is shown in the record is the negligence of a fellow servant of the deceased. Our statutes defining fellow servants having application only to persons who are engaged in the service of a person, receiver or corporation controling or operating a railroad or street railway, we are to look elsewhere for a determination of the question of whether or not deceased and Harmsley were fellow servants. That they were fellow servants seems too plain for discussion, since both were engaged in the common service of the grain company in conducting and carrying on the same general business, and neither was in any sense under the control or direction of the other. Consumers Cotton Oil Co. v. Jonte, 36 Texas Civ. App., —, 10 Texas Ct. Rep., 63; Whitmore v. Boston & M. Ry. Co. (Mass.), 23 N. E. Rep., 220; 2 Labatt on Mast. and Serv., pars. 492, 493, 494, 498.

Furthermore, we think the peremptory instruction justifiable upon another ground. The deceased is shown to have been in the service of the grain company for a number of months. At the time of the accident, when he undertook to pass from one platform to another ac-

cross the track between two empty cars, he necessarily knew that there was neither watchman, barrier nor other guard to warn him of the approach of loaded cars, which are shown to have been run in every few minutes continuously, and whatever defects, omissions or other negligence upon the part of the company existed at the time in respect to this situation, he necessarily knew thereof. The situation was open and obvious to anyone. There were no latent defects or secret dangers. He undertook under these circumstances to go into a place of known danger, and in doing so he assumed the risk of the cars being kicked out in their usual and customary manner.

We are therefore of the opinion that appellant's assignments of error should all be overruled and the judgment affirmed.

*Affirmed.*

Writ of error refused.