Johnny Wilbur **HICE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45842.

Court of Criminal Appeals of Texas.

March 21, 1973.

Rehearing Denied April 11, 1973.

Evans & Marshall, San Antonio, for appellant.

Ted Butler, Dist. Atty., Charles T. Conaway, Fred Rodriguez and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of sale of heroin. The jury assessed punishment at ten years.

The sufficiency of the evidence is challenged.

The appellant was arrested on December 3, 1970, as the result of a sale of heroin which he made to Jerry Rangel, an undercover officer of the San Antonio police department. Rangel testified that on November 11, 1970, he purchased one capsule of heroin from the appellant for three dollars and fifty cents. Later that afternoon, he went to the Narcotics Bureau of the San Antonio police department and field tested

the capsule and the result showed it contained heroin. Dennis Torraco, a chemist for the San Antonio police department, testified that his analysis showed the capsule to contain heroin.

■ Counsel contends that a chain of custody was not established and thus the capsule sold to Rangel was not the same one produced in court.

Officer Rangel testified that after he ran the field test on the capsule obtained from appellant, he placed it in a white envelope, labeled and sealed it. He then gave it to Detective Harry Carpenter who then placed the white envelope in a large brown manila envelope, sealed and placed his name on it. Detective Carpenter testified that he locked the envelope in the narcotics locker where it remained until he gave it to Dennis Torraco for a complete laboratory analysis. The chain of custody was established. The evidence is sufficient to support the conviction.

■ In three grounds of error, appellant contends that the trial court failed to properly admonish the jury and that as a result of that failure jury misconduct occurred when one of the jurors read a newspaper article concerning the undercover work of Officer Rangel.

Article 35.23, Vernon's Ann.C.C.P., in part, reads:

"In any case in which the jury is permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when so separated."

The record reflects the following admonishment to the jury panel by the trial judge during his opening remarks:

"During your deliberation in a case, in any given case, you must not consider nor discuss nor relate any matters not in evidence before you during the trial. You should not consider nor mention any personal knowledge or information that you have about any fact or person connected with the case which is not before you in evidence through sworn testimony.

"* * *

". . . During the recesses you will be permitted to separate and go about your different ways. However, during your separations you are not to discuss the facts among yourselves or with any other person, do not attempt to talk to the prosecutors or the defense counsel or the defendant or my Court reporter, my bailiffs or my clerks, or anyone else connected with the case . . . That is not sworn testimony and may influence your verdict."

Then, again at the close of the first day's testimony and before allowing the jury to separate for the evening, the trial court gave the following admonishment:

"The Court is going to again advise you and admonish you and remind you of what the Court explained to you earlier. Please, when you go home, do not discuss the facts that you have heard with anyone at home, with your husbands or with your wives or with your children or with your neighbors or with your friends or with anyone. Please, because whatever they may say—you may mention something and they may say something that is not under oath and it may influence, or have some influence upon your verdict tomorrow in this case and it would not be fair to this accused or any other person on trial. So for that reason the Court is admonishing you to not discuss the facts with anyone at home."

Appellant argues non-compliance with the provisions of Article 35.23, supra, because there was no specific mention of newspapers or other news media, or instructions not to read about or listen to reports of the proceedings of the related activities of anyone connected with the case.

On the morning of March 19, 1971, the second day of the trial, an article appeared

in the San Antonio Express newspaper entitled RANGEL'S WORK SO FAR WORTH 284 PENALTY YEARS. The article gave a brief account of Officer Rangel's activities and the number of indictments resulting therefrom. It also made a statement of the number of trials completed and the average length of sentences given in each.

Counsel for appellant brought this article to the trial court's attention and made a motion to disqualify the jury. His motion did not affirmatively allege that any juror had actually been exposed to the article. Appellant's motion assumed that the jury had violated the court's admonishment.

The trial court held his motion in abeyance until the conclusion of the trial. Throughout the remainder of the trial the jury was admonished before each recess not to read newspaper accounts or listen to television, radio or other news media reports.

After the jury returned their verdict, the trial court questioned each juror about the article allowing appellant's counsel to also question those jurors he wished to question. Only one juror testified that he had seen the article. He admitted to having read the article at breakfast that morning. In response to questions propounded by both the trial court and appellant's counsel, the juror stated that he read it not knowing it pertained in any way to this case and that he did not discuss the article with anyone. All twelve jurors stated that the article was not discussed while they were deliberating their verdict.

A careful study of the trial court's initial admonishment and of that given prior to allowing them to separate for the evening shows that the jurors were properly instructed within the meaning of Article 35.23, supra. It was not absolutely necessary that the trial court specifically mention newspapers or other news media; the court's instructions encompassed such materials.

 While it is the better practice that the jury, during the trial of the case, be told not to listen or view accounts of the trial, such becomes reversible error only when the accused is injured or prejudiced thereby. 1 Branch's Ann.P.C.2d, Section 581, page 552; Banner v. State, 154 Tex. Cr.R. 153, 225 S.W.2d 975.

There is no showing that the juror read about this trial. In fact, only one juror had read the article. We cannot say that appellant was injured or prejudiced by the one juror's reading of the article. Had he discussed the article with the other jurors, a different question might be presented.

We have reviewed the other complaints and they do not reflect error.

Finding no reversible error, the judgment is affirmed.