**L. D. KIRKPATRICK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 48630.

Court of Criminal Appeals of Texas.

Nov. 6, 1974.

Rehearing Denied Nov. 27, 1974.

Emmett Colvin and Lawrence B. Mitchell, Dallas, for appellant.

Ted Butler, Dist. Atty., John L. Quinlan, III, Charles Conaway, David K. Chapman, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is misapplication of county funds under Article 95, Vernon's Ann.P.C.; the punishment, two years probated.

 Appellant's first contention is that the evidence is insufficient to support the conviction because it was not shown that the appellant converted the $3.00 described in the indictment to his own use and benefit. The indictment charged basically that on or about October 15, 1970, the appellant, as Justice of the Peace, converted $3.00 belonging to Bexar County. The court charged the jury that the date alleged could mean any date between June 22, 1969, and June 21, 1972. The State's evi-

dence showed and the appellant admitted that he failed to account to the county for a total of $1594.00 which he had collected from individual defendants as fines in criminal cases during the said period of time set out in the court's charge. Such monies were withheld for up to 14 months in appellant's bank account while appellant was periodically turning over a portion of the funds collected to the county and falsely reporting that these were all the monies collected. Only when an audit was instituted and appellant was called to account did he pay the county the $1594.00 due. We hold that the unauthorized retention by the appellant of this money due the county is sufficient evidence to support the jury's verdict that the appellant converted these funds to his own use. See Vernon v. State, 170 Tex.Cr.R. 150, 338 S.W.2d 728; Mayse v. State, 156 Tex.Cr.R. 360, 242 S.W.2d 371. The State was not limited to the showing of $3.00 as being the subject of conversion. Mayse v. State, supra; Kugle v. State, 124 Tex.Cr.R. 550, 64 S.W.2d 961.

Grounds of error two, three, nine and ten relate to the admission of evidence and the refusal to give limiting charges regarding what appellant contends were extraneous offenses, to-wit: the receipt by the appellant of fines from some 275 persons accused of crimes, which fines he only partially transmitted to the treasurer.

 We conclude that the $1594.00 which was embezzled, which included conversion of funds received from some 275 individuals, all involved circumstances to prove the State's main case. The appellant urges that all transactions other than the one involving an individual by the name of Kouns were extraneous transactions. We reject this contention. The gravamen of the offense under this particular statute, Article 95, V.A.P.C., is embezzlement of funds belonging to a public body, not the taking of property from a particular individual or individuals. The indictment accordingly did not allege any particular transaction or any particular individual, and specifcally did not mention Kouns. In

receiving funds in an official capacity, the appellant became, in effect, a trustee of funds for the county. Because of the nature of the employment involved, the State need not show that appellant converted any particular sum from a particular source to his own use, but may rely on a circumstantially proven case. The appellant, in fact, urged and urges on appeal that the evidence is insufficient to show that he converted any funds to his own use. These many transactions in which the appellant failed to account for funds collected were all a part of the State's main case, and constituted circumstances in the chain of events by which the State showed the ultimate conversion of county funds to the appellant's own use and benefit. The court charged the jury on the law of circumstantial evidence. We conclude that the court did not err in refusing to give the limiting charge as requested by appellant. Dillard v. State, Tex.Cr.App., 477 S.W.2d 547; Cox v. State, 166 Tex.Cr.R. 587, 316 S.W. 2d 891; 31 Tex.Jur.2d, Instructions, Sec. 132 (1962). See Tex.Digest, Criminal Law, ▮▮▮

▮ We are further convinced that appellant was not entitled to a limiting charge, because he not only testified himself as to the details of the ancillary transactions, but also initially introduced some of them.

In identifying Defendant's Exhibits Nos. Three, Four, Five, Six and Seven, appellant explained that they were checks, drawn on his account, issued to various individuals who had had cases pending against them in appellant's court. When questioned by his own counsel as to the nature of these checks, appellant admitted to a discrepancy between the amount paid by these individuals in fines and the actual amount assessed against them.

"Q (DEFENSE ATTORNEY) All right, sir. Now what was the purpose or the reason in making these checks to these individuals?

A (APPELLANT) The reason being that those individuals had deposited—left with the court in my office an amount of money which was greater than the amount of fine and cost that was assessed by me in the judgment of these particular cases."

The record further reflects that upon direct examination of the appellant by his own attorney, the appellant testified that he agreed with the auditors on their finding of a $1594.00 discrepancy on the county books.

"Q Okay. And when you got there (to the auditor's office) what, if anything, was said by Mr. Sanderson or by Mr. Cox (the auditors)?

A . . . (H)e said, well Judge as you know we've been auditing your books and so forth and we found a discrepancy of quite a large sum of money on a number of cases. I don't know justly exactly how he put it. I believe he said a number of cases. I don't know for sure.

Q All right, and what did you say, if anything?

A I told him, yes, I agree.

Q All right and what, if anything did Mr. Cox or Mr. Sanderson say after that?

A Well, he advised me that I owed the county fifteen hundred and ninety four dollars. . . . He asked me could you pay the money and he asked me would you pay the money, meaning the county."

Given this testimony, it is clear that the appellant was not entitled to a limiting charge on his own admissions. See Moss v. State, Tex.Cr.App., 364 S.W.2d 389; Sapp v. State, Tex.Cr.App., 476 S.W.2d 321, cert. den. 406 U.S. 929, 92 S.Ct. 1806, 32 L.Ed.2d 131; and Judge Onion's discussion distinguishing *Moss* in his dissent in Lacy v. State, Tex.Cr.App., 424 S.W.2d 929, 936.

▮ We further find that, even if error, the failure to give a limiting instruc-

tion was harmless error. An examination of the evidence reveals that the only defenses urged and the only issues the jury was called upon to resolve were (1) whether appellant converted the funds to his own use, and (2) whether the funds belonged to individuals rather than to the county as alleged in the indictment. *In view of the testimonial admissions by the appellant that he was the person who committed all of the acts, the failure of the court to charge the jury not to consider the ancillary transactions unless they first believed the appellant committed such acts beyond a reasonable doubt obviously did not harm the appellant.* As previously pointed out, the appellant himself introduced several extraneous acts in which he failed to fully account to the county for fines collected, but had refunded or attempted to refund all unaccounted monies to the respective individuals. We fail to see how the jury would have or could have considered these transactions for a purpose other than as circumstances bearing on the appellant's intent, motive, etc. The failure of the court to limit the consideration of testimony to a certain purpose, where that testimony could not have been used for any other purpose, does not require reversal. Ross v. State, 71 Tex.Cr.R. 493, 159 S.W. 1063; Sapp v. State, supra.

■ The appellant confessed that he retained the funds. The court charged the jury on the intent required under the statute and on the law of circumstantial evidence. The charge as a whole fully protected the defendant's rights. See Article 36.19, Vernon's Ann.C.C.P. See particularly this Court's reasoning in Campbell v. State, 131 Tex.Cr.R. 377, 99 S.W.2d 602.

■ Grounds of error four and five relate to argument of the prosecutor in which he made reference to "people in office" and "crooked politicians", which appellant contends was outside the record, and a reference to Watergate. We find nothing in the argument referring directly or indirectly to our recent national scandal known as Watergate, and we do find that the remarks were invited by appellant's counsel's reference in his argument to the appellant's being an elected official and a politician.

■ Ground of error six contends that the indictment is vague and uncertain and the court erred in failing to sustain appellant's motion to quash the same. We find the indictment in the same form which this Court approved in Beard v. State, 140 Tex. Cr.R. 127, 143 S.W.2d 967. See also Willson's Criminal Forms, Seventh Edition, Sec. 62, p. 30.

■ Ground of error seven urges that there is a fatal variance between the indictment, which alleged the conversion of cash, and the proof, which showed the conversion of a check. A similar contention was presented in Rick v. State, 151 Tex. Cr.R. 426, 207 S.W.2d 629, wherein this Court said:

> "Appellant obtained the money of Richardson by a false pretext, through the instrumentality of the check, upon which he received the money."

The Court held no variance. See also Stephenson v. State, 138 Tex.Cr.R. 384, 135 S.W.2d 1005, and Bennett v. State, 124 Tex.Cr.R. 128, 60 S.W.2d 790.

Cases cited by the appellant have application to tax collectors only, where a special statute controls, and are thereby not here controlling.

■ Ground of error eight relates to argument in which the prosecutor said in effect that if the jury did not convict this appellant he would engage in "further looting". In Asay v. State, Tex.Cr.App., 456 S.W.2d 903, we said that a prosecutor's plea to lock up the accused for a long time to prevent him from doing the same thing again was a proper plea for law enforcement.

■ Ground eleven relates to the failure of the court to define the term "money" in his charge. In Mayse v. State, 156 Tex.

Cr.R. 360, 242 S.W.2d 371, we held that no definition of this term was required.

Ground twelve relates to the failure of the court to grant his requested charge "on the effect of reputation evidence in determining guilt and innocence." Such contention has been considered and overruled in Gilderbloom v. State, 160 Tex. Cr.R. 471, 272 S.W.2d 106.

Grounds thirteen and fourteen relate to improper comments in the form of questions. In both cases the objections were sustained; the questions were not answered; and instructions to disregard were given. Generally, the asking of questions does not constitute reversible error where no new fact is injected and no statute is violated. Reyes v. State, Tex.Cr. App., 388 S.W.2d 433; Ramos v. State, Tex.Cr.App., 419 S.W.2d 359; Blackstock v. State, Tex.Cr.App 433 S.W.2d 699.

Ground fifteen relates to failure to grant a motion to quash the jury panel because one member had read a news account concerning the case. Such news story related no more than the fact that the case was called for trial and the nature of the accusation. In Hice v. State, Tex. Cr.App., 491 S.W.2d 910, we held no error was shown where, as here, there was no showing that the juror discussed the news story with other jurors.

Finding no reversible error, the judgment is affirmed.

ROBERTS, Judge (dissenting).

I dissent. The majority's action in overruling the appellant's second, third, ninth and tenth grounds of error has no support in law and is, in fact, contrary to holdings of numerous decisions of this Court.

The appellant, properly complying with the requirements of Art. 36.15, V.A.C.C.P., submitted to the court a requested charge to the jury which limited their consideration of evidence of certain extraneous offenses to the questions of identity, intent, motive and scheme. The requested charge would also have instructed the jury not to consider the evidence for any purpose unless it was concluded that appellant had, beyond a reasonable doubt, committed the alleged offenses. The requested instruction was denied.

Under many holdings of our Court, that denial was reversible error. The majority now hold that the evidence was not only admissible (a proposition with which I agree), but that no instructions need be given to the jury regarding it. I cannot agree with this contention.

In Ernster v. State, 165 Tex.Cr.R. 422, 308 S.W.2d 33 (1957) the prosecution was for the offense of misrepresenting a written instrument affecting property, a violation of Art. 1000, V.A.P.C. The instrument on which the charge was based was one of thirteen contracts relating to the sale of a subdivision. At trial, all the contracts were introduced for the purpose of showing intent and the court so limited their use in his charge. However, the court declined to instruct the jury not to consider the extraneous offenses unless they found, beyond a reasonable doubt, that the accused had committed them.

This Court, after considering a number of its prior decisions, held that the failure to properly limit the jury's consideration of the extraneous offenses required reversal.

In Miller v. State, 122 Tex.Cr.R. 59, 53 S.W.2d 790 (1932), the prosecution was brought under Art. 95, V.A.P.C., the statute involved here. Testimony regarding extraneous transactions was offered, and the court authorized the jury to consider it, if at all, only for the purpose of showing intent. However, the court refused, over the appellant's objection, to istruct the jury not to consider the matters unless the appellant's guilt regarding them was shown beyond a reasonable doubt. This Court held that the appellant's exception to the charge was well taken, and reversed

the case because of it. See also Curry v. State, 169 Tex.Cr.R. 195, 333 S.W.2d 375 (1960).

These cases, and the authorities cited therein, standing alone, would justify our reversal of the judgment in this case. However, here the court not only failed to require the jury not to consider the extraneous matters unless appellant's guilt regarding them was shown; he also failed to limit the jury's use of this evidence to the purpose for which it was introduced.

It is axiomatic in our criminal practice that extraneous offenses, although admissible for certain purposes, must be limited in their use to those purposes, lest an accused be tried for being a criminal generally rather than for having committed a specific, charged offense. Thus, whenever there is a danger that evidence may be appropriated by the jury to an improper purpose, the court should limit their consideration of it to the purpose for which it was admitted. See Thompson v. State, 137 Tex.Cr.R. 168, 128 S.W.2d 821 (1939) and Nichols v. State, 138 Tex.Cr.R. 324, 136 S.W.2d 221 (1940).

In the instant case, the State proved well over two hundred extraneous transactions similar to the one for which appellant was indicted. Appellant made a timely and proper request that the court limit the jury's consideration of these matters to the purpose of showing intent, method, scheme and design. The court refused the request. The court's refusal to grant the appellant's requested charge, or an instruction of similar import, left this evidence before the jury without any limitations of any kind. The jury was instructed that the State was not bound by the date alleged in the indictment, or by the amount of money alleged to have been misappropriated. The effect of this instruction (which was proper), coupled with the refusal to give the requested limiting instruction, was to give the jury over two hundred offenses and tell them they could convict on one. The jury was told, in effect, that the appellant

need not be guilty of the offense for which he was indicted in order to be convicted. This has never been the law. See McCall v. State, 14 Tex.App. 353 (Tex.Ct.App. 1883) and Long v. State, 11 Tex.App. 381 (Tex.Ct.App.).

The charge requested by the appellant has been considered to be a proper one in a number of cases, many of which involved prosecutions under Art. 95, V.A.P.C. See Nees v. State, 402 S.W.2d 186 (Tex.Cr. App.1966); Vernon v. State, 170 Tex.Cr.R. 150, 338 S.W.2d 728 (1960); Sims v. State, 169 Tex.Cr.R. 466, 334 S.W.2d 818 (1960); Miller v. State, supra; McKinney v. State, 104 Tex.Cr.R. 315, 283 S.W. 798 (1926); Brackenridge v. State, 27 Tex.App. 513, 11 S.W. 630, 4 L.R.A. 360 (1889) and Campbell v. State, 163 Tex.Cr.R. 545, 294 S.W.2d 125 (1956) and cases there cited.

The majority opinion's reliance on the proposition that limiting charges are not required when the extraneous offenses are admitted to prove a main issue in the case is misplaced. That proposition is, essentially, correct and I do not quarrel with it. It has an established history in our law. See Dillard v. State, 477 S.W.2d 547 (Tex. Cr.App.1971); Davidson v. State, 22 Tex. App. 372, 3 S.W. 662 (1886) and Hall v. State, 31 Tex.Cr.R. 565, 21 S.W. 368 (1893).

However, the proposition has often been expanded by imprecise language to embrace matters not originally contemplated as within its scope. Thus, as was observed in the dissenting opinion on appellant's Motion for Rehearing in Lacy v. State, 424 S.W.2d 929 (Tex.Cr.App.1968) at p. 935:

"It should be borne in mind, however, that a distinction between motive and intent should be obeserved with relation to the question of limiting the evidence. It is not necessary to limit evidence that is a part of the offense and which tends to show the motive actuating the party at the commission of the offense, whereas a collateral crime not growing out of the offense in question and which is introduced for the purpose of illustrat-

ing the intent with which the crime charged was done should be limited in the court's charge."

This distinction has historically been recognized, so that the proposition relied upon by the majority was seen as an exception to the rule, rather than the rule itself. In Hall v. State, supra, when the appellant challenged the use of extraneous offenses to show motive, the Court said:

"The authorities cited by appellant sustain the proposition that when independent, contemporaneous crimes, or crimes showing system, are adduced and relied on to connect the accused with the offense on trial, or to develop res gestae, *or to show intent*, they should be restricted to their proper office by appropriate instructions. This rule grows out of the necessity of protecting the accused against conviction of an offense not charged in the indictment, and to guard him from prejudice that might occur on account of such crimes being admitted as evidence . . ." (Emphasis added)

Both the necessity for the distinction and the distinction itself are discussed in the opinion on Motion for Rehearing in Weaver v. State, 46 Tex.Cr.R. 607, 81 S.W. 39 (1904), wherein the Court said, at p. 44:

"As used in the authorities in this court and other courts, there is a distinction; that is, the courts hold that evidence which is part and parcel of the offense, which tends to show the motive actuating the party at the time of the commission of the offense, is not necessary to be limited, whereas a collateral crime, not growing out of the crime in question, is introduced for the purpose of illustrating the intent with which the act was done, and this court has uniformly held that such testimony should be limited, because the jury might appropriate the testimony for other purposes than that for which it was legally introduced."

See also the opinion on Motion for Rehearing in Harrelson v. State, 60 Tex.Cr.R. 534, 132 S.W. 783 (1910).

In Dillard v. State, 477 S.W.2d 547 (Tex. Cr.App.1971), the question was again one of admissibility. The jury was instructed to consider the evidence only on the issue of identity. We held, although the position was not urged by the State, that the evidence was *also* admissible to show malice, and stated that no limiting charge was necessary as to evidence proving a "main issue." That statement, though too broad, was correct. The early cases establishing that no limiting instructions need be given as to evidence showing motive equated malice with motive, so that it was often said that evidence showing either need not be limited. See Millican v. State, 63 Tex. Cr.R. 440, 140 S.W. 1136 (1911). At the same time, they required that evidence showing intent be limited. See Hall v. State, supra, and Weaver v. State, supra. This is the proper rule.

It is no answer to rely on broad language while ignoring the precise and well-explained rulings of the authorities cited herein unless the majority regard that long line of cases as overruled. If they do so, they are in error, for those cases advance the better rule.

I dissent to the disposition of this case and would reverse and remand for the errors disclosed by appellant's second, third, ninth and tenth grounds of error.

ODOM, Judge (dissenting).

The majority conclude that no limiting charge was required because the evidence of "ancillary transactions" (conversion of funds from some 275 individuals) amounted to "circumstances to prove the State's main case." After correctly asserting that an offense under Article 95, V.A.P.C., involves "embezzlement of funds belonging to a public body, not the taking of property from a particular individual or individuals," the majority come to the conclusion that the "many transactions in which the appellant failed to account for funds collected" constituted evidence of "the ultimate conver-

sion of county funds to the appellant's own use and benefit."

If all of the funds received were converted in violation of the statute at one time, there would be only one conversion, one offense, and therefore no extraneous offense. Where, however, the funds were received at various times over a three year period, and where appellant appears to have been required to surrender funds weekly with a report of the funds collected, how can the majority say there was but one conversion? Is it the majority's position that when an official under Article 95, supra, has established a practice of repeatedly converting public funds to his own use and benefit, until he is caught only *one* offense has been committed? Although it is true that each receipt of funds is not a separate offense, each separate conversion *does* constitute a separate offense. The evidence of the State clearly reveals that not all of the 275 separately collected funds were converted at the same time. The separate conversions were separate offenses. The court was required to honor appellant's request for a limiting charge on the use of the evidence of extraneous offenses.

The majority assert in the alternative that appellant himself testified to some of the "ancillary transactions." The majority may not have it both ways. Appellant's testimony was an attempted explanation of discrepancies in figures showing *funds received*, which, as pointed out by the majority, is not the characteristic which determines whether there was evidence of extraneous offenses. Appellant did not testify to extraneous conversions.

Finally the majority state that, even if error, the failure to give a limiting charge was harmless error because the jury was only called upon to resolve two issues, one of which was whether the funds belonged to individuals rather than to the county. If admissible to show intent, how does that render extraneous conversions relevant on the issue of to whom the funds belonged? Furthermore, one of the purposes of re-

quiring a limiting instruction is to prevent the jury from using extraneous offenses to convict the accused for being a criminal generally, one of the dangers in admitting such evidence, but clearly not a proper issue in any case. Cf. Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972).

I dissent from the majority's disposition of this issue.