**Cloyce Leon (Ducky) McCALEB, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51051.**

Court of Criminal Appeals of Texas.

June 9, 1976.

Rehearing Denied June 30, 1976.

value of $50 under the former penal code. Punishment was assessed by the court at five years after the jury returned a verdict of guilty.

In his first ground of error, appellant contends that the trial court erred "in failing to require the State to elect as to which transaction, shown by the evidence, it would rely upon in seeking a conviction under the allegations contained in the indictment."[1]

The record reflects that appellant made a motion to require the State to make an election as to which transaction it would seek a conviction under at the close of the State's evidence. In his objections to the court's charge, appellant again complains of the court's failure to require the State to elect.

The indictment alleged in pertinent part that appellant

" . . . on or about the 13th day of November, A.D., 1972 and anterior to the presentment of the Indictment, in the County and State aforesaid did then and there unlawfully and fraudulently take lawful money of the United States of the value of over fifty Dollars the same then and there being the corporeal personal property of and belonging to Wayne C. Hill. . . ."

Appellant relies on *Bates v. State,* 165 Tex.Cr.R. 140, 305 S.W.2d 366 (1957); *Adams v. State,* 126 Tex.Cr.R. 492, 72 S.W.2d 912 (1934), and *Roddy v. State,* 118 Tex. Cr.R. 315, 40 S.W.2d 129 (1931), in support of his contention.

The record reflects that appellant obtained more than $24,000 over a period of more than five months from the prosecuting witness, Dr. Wayne C. Hill, by representing to him that he had found a cache of silver and would give the prosecuting witness a por-

Clifford W. Brown, Lubbock, for appellant.

E. W. Boedeker, Dist. Atty., Levelland, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of theft of property over the

1. While the indictment charges an offense occurring prior to the effective date of the new penal code, January 1, 1974, the record reflects that trial was not until January, 1975. We find it unnecessary to determine whether the provisions of Chapter 3, "Multiple Prosecutions," of the new Penal Code (effective January 1, 1974) are applicable to the instant case, since there appears to have been no attempt at "Consolidation and Joinder of Prosecutions" as provided for in V.T.C.A. Penal Code, Section 3.02. See also Article 21.24, V.A.C.C.P., as amended (effective January 1, 1974) relative to "Joinder of Certain Offenses" in the charging instrument.

tion of it for furnishing funds to retrieve the silver from its hiding place in a canyon in Nevada. On November 13, 1972, appellant purported to sell to Dr. Hill and his wife each a one percent interest in the enterprise for a price of $1,000. At this time Dr. Hill paid $200 down for each one percent interest, making a total down payment of $400. On November 26, 1972, Dr. Hill purchased another one percent interest for his son in the enterprise, again for a total purchase price of $1,000, paying $200 down. Two days later, on November 28, 1972, appellant purported to sell to Dr. Hill a 37% interest in the enterprise in exchange for an agreement that the prosecuting witness would provide up to $20,000 for the purchase of equipment appellant represented to be necessary to the recovery of the silver. At this time Dr. Hill gave appellant a check for $5,000 to cover the first portion of such expenses. Dr. Hill next saw appellant on December 28, 1972. On that date he gave the appellant another $5,000 check to cover further expenses pursuant to the contract made between them.

On February 6, 1973, Dr. Hill gave an additional $5200 to appellant. He advanced the additional money to appellant on the condition that appellant give him a promissory note to cover all monies previously advanced under their agreement. Only after appellant had given his note for $15,800 did Dr. Hill advance the money. The record reflects that sometime late in January Dr. Hill refused to give more money for equipment and supplies "because I had spent enough money and had not seen anything and no evidence of buying equipment, no bills of sale or anything like that, so I balked on him. I didn't give him any money at that time." A portion of Dr. Hill's testimony relating to the February 6th transaction is as follows:

"Q. All right, did you, as a result of him talking to you at that time, did you give him anymore money?

"A. Under certain conditions.

"Q. All right, what were those conditions?

"A. That he give me a note for the amount that I would spend this time and the times previous; up to that time, suggested by Hunter.

" *    *    *

"Q. All right, and what was your conversation there with Mr. McCaleb— to Mr. Hunter at that time concerning some more money?

"A. That I would advance some more money for this half truck, providing he gave me a note for this amount and the previous amount that I had given him already at three months—ninety days at 8½%.

" *    *    *

"Q. All right, and how much did he give you a note for at that time?

"A. Fifteen thousand, eight hundred dollars.

"Q. All right, did you give him a check at that time?

"A. I gave him a check at that time."

The sums of money previously given appellant by Dr. Hill to include the $5200 given him on this date total $15,800.

On March 2, 1973, Dr. Hill furnished appellant $4500 more on the strength of appellant's representation that the money was required to purchase further equipment and supplies and to make repairs to equipment already purchased in order to continue the removal of the silver. Finally, on the 20th of April, 1973, Dr. Hill gave to the appellant another $4,400 check above and beyond their previous agreement on the strength of the appellant's representation that these final funds would enable him to complete the job of removing the silver from the canyon. All of these checks were cashed by appellant and the funds applied to his own use. The cache of silver never existed and no equipment or supplies as represented were ever purchased.

The evidence is clear that McCaleb's purpose was to "con" Dr. Hill out of as much money as possible. He designed a scheme based upon a non-existent silver cache in Nevada as the device by which his purpose could be accomplished. First, he sold a one percent interest to Dr. Hill for him and his

wife; second, he sold a one percent interest for Hill's son; third, he entered into a contract to sell a 37% interest in return for funds to buy equipment; fourth, he had Dr. Hill advance additional money. Subsequent to the note there were two additional advances to finish the job. McCaleb's single design, impulse and purpose are further evidenced by his signing of a promissory note for all previous amounts advanced to him.

The present case is like *McClelland v. State,* 390 S.W.2d 777 (Tex.Cr.App.1965), wherein this Court held that the State is not required to elect in a prosecution for bribery where it was dealing with one offense which involved many transactions. In the *McClelland* case the transactions occurred over a period of time extending from December 2, 1960 through May, 1962. During that time McClelland, then Probate Judge of Harris County, had accepted bribes from five different individuals in order that they might be appointed appraisers in cases before his court on 3511 occasions. During the same period 257 other persons had been so appointed to act a total of 2225 times. McClelland had established a bank account for his own use and benefit under the name of Tierra Grande, Incorporated, a corporation duly incorporated and licensed to do business in the State of Texas. No business was ever conducted by the corporation but the money in the account " . . was used to pay his club bills, parking garage fees, payment on automobiles, to send his son to camp, to pay gasoline bills, and a large part was paid to the appellant or to his wife directly."

■ After a conviction where one scheme has been relied upon and all of the transactions have been proved and where there has not been an election, the State cannot prosecute upon the individual transactions in subsequent cases because each transaction was a part of the same case.

■ We hold that the trial court did not err in refusing to require an election.

Those cases upon which appellant has relied to the extent that they were in conflict were in effect overruled by *McClelland v. State,* supra. We adhere to the ruling in the *McClelland* case.

■ In his second and third grounds of error appellant complains of the admission of evidence and the refusal to give limiting charges regarding what appellant contends are extraneous offenses involving the sale of an interest in the alleged silver cache to Dr. Hill for his wife, E. J. Watkins and Mary Riley. The record reflects that Dr. Hill actually purchased the interest for his wife and that appellant's counsel brought out the Watkins' involvement during his examination of Mary Riley. As to the admission of Mary Riley's testimony, the error, if any, was harmless. We fail to see how the jury would have or could have considered these transactions for a purpose other than as circumstances bearing on the appellant's intent, motive, etc. The failure of the court to limit the consideration of her testimony to a certain purpose, where that testimony could not have been used for any other purpose, does not require reversal. *Kirkpatrick v. State,* 515 S.W.2d 289 (Tex.Cr.App.1974); *Ross v. State,* 71 Tex.Cr.R. 493, 159 S.W. 1063 (1913), and *Sapp v. State,* 476 S.W.2d 321 (Tex.Cr.App.), cert. denied, 406 U.S. 929, 92 S.Ct. 1806, 32 L.Ed.2d 131 (1972).

No reversible error having been shown, the judgment is affirmed.

ROBERTS, Judge (dissenting).

For the reasons stated in my dissenting opinion in *Kirkpatrick v. State,* 515 S.W.2d 289, 294 (Tex.Cr.App.1974), I dissent to the overruling of appellant's three grounds of error.[1]

1. These grounds are incorrectly decided even under the rationale of the *majority* opinion in *Kirkpatrick.* There the Court held that a limiting charge on extraneous offenses was not required because the defendant in that case was charged with misapplication of county funds under Article 95 of our former Penal Code. Thus, the Court said: "The gravamen of the offense under this particular statute . . . is embezzlement of funds *belonging to a public body, not the taking of property from a particular individual or individuals.*" *Kirkpatrick v.*

*State,* supra, at 291. [Emphasis added.] In the case before us, the offense is theft under our former Code, which necessarily involves a single taking from an individual "person". Art. 1410, V.A.P.C. (1925). Here, there was no "ultimate conversion of county funds" which was comprised of "many transactions . . . which . . . were all a part of the State's main case." *Kirkpatrick,* supra, at 292. *McClelland v. State,* 390 S.W.2d 777 (Tex.Cr. App.1965), can be similarly distinguished: like misapplication of county funds, bribery is an offense against the *public,* not an individual.

Moreover, the *Kirkpatrick* majority relied heavily on the fact that any error was cured and rendered harmless by the fact that the defendant took the stand and admitted retaining the funds. In the case before us, the appellant did not take the stand or present any evidence. The *Kirkpatrick* case simply does not apply.

Nor are *Ross v. State,* 71 Tex.Cr.R. 493, 159 S.W. 1063 (1913), and *Sapp v. State,* 476 S.W.2d 321 (Tex.Cr.App.1972), applicable. Both of those cases deal with evidence used for impeachment, and both are distinguishable on their facts.