Hunter Michael Davenport v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-170-CR

HUNTER MICHAEL DAVENPORT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. 
Introduction

Appellant Hunter Michael Davenport appeals his conviction for two counts of aggravated sexual assault of a child.  The jury found Davenport guilty of both counts and assessed his punishment at thirty-two years’ confinement and a $10,000 fine for Count One and thirty-two years’ confinement for Count Two.  The trial court sentenced him accordingly, with the sentences to be served concurrently.  Thomas raises five issues on appeal.  We will affirm.

II.  Factual and Procedural Background

Davenport married Crystal in 1997.  At the time, Crystal had two daughters, A.S. and K.S.  Davenport took on the role of stepfather to Crystal’s two daughters.  The couple had one child, H.D., together in 1998.  When A.S. was eleven years old, Davenport told A.S. that she needed to learn how to defend herself.  He said that if anyone came into the house and tried to rape her, she should know how to untie herself in order to get away.  Davenport said she should practice untying herself while naked because she would probably be naked if someone came into the house.  A.S. took off all her clothes except her panties, and Davenport tied her to the chair and timed her untying the rope. Davenport also “pushed himself up against [A.S.] . . . to make sure [she] knew what to do.” 

Over time, Davenport developed a strong bond with A.S. and became the “cool dad.”  He would give A.S. cigarettes and alcohol.  Davenport began using alcohol as a reward for a hug or a kiss.  The kissing became more intimate, “touching came along” with it, and Davenport began frequently making out with A.S.  When she was twelve, Davenport had sex with her for the first time.  Davenport began having sex with A.S. on a regular basis.  Crystal had suspected something was going on between Davenport and A.S., but every time she confronted them, they denied it.  Around March of 2003, A.S. discovered she was pregnant.  She told Crystal that the father was a boy at her school named Arsenio, although A.S. and Davenport thought that Davenport was the father.  It was later discovered that another boy was the father. Crystal and Davenport separated around the time that A.S.’s baby was born, but Davenport continued to keep A.S., K.S., and H.D. every other weekend.  On February 7, 2004, while the children were with Davenport, Crystal’s friend told her that she had seen Davenport kissing A.S. in his truck. Crystal called Davenport and demanded that Davenport submit to a paternity test.
(footnote: 2)  He concocted a story that he put his semen in a syringe and that A.S. used the syringe to artificially inseminate herself because she wanted a baby and threatened to call Child Protective Services if he did not impregnate her. Davenport and A.S. told this story to the police and to Crystal, but A.S. eventually told the police that she and Davenport had a sexual relationship.

III.  No Double Jeopardy Violation
 

Count One of the indictment alleged that Davenport intentionally or knowingly inserted his penis into A.S.’s sexual organ on or about February 7, 2004.  Count Two of the indictment alleged that Davenport intentionally or knowingly caused A.S.’s sexual organ to contact his sexual organ on or about February 7, 2004.  The two counts were submitted to the jury with instructions that the State was not bound to prove the exact date alleged in the indictment but could prove that the offenses occurred at any time prior to the presentment of the indictment and within ten years of the filing of the indictment.  The jury convicted Davenport of both counts in the indictment.  

In his first point, Davenport contends that his conviction for both counts of aggravated sexual assault of a child resulted in the imposition of multiple punishments for the same offense in violation of the prohibition against double jeopardy.  The State contends that Davenport failed to preserve this argument by not raising it at trial and that, in the alternative, there is no double jeopardy violation on the face of the record.    

Before we reach the double jeopardy issue raised, we note that Davenport did not make a request, objection, or motion raising his double jeopardy complaint to the trial court.  Although generally this failure to preserve error would preclude us from considering the alleged error, a double jeopardy claim may be raised for the first time on appeal, however, when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) the enforcement of the usual rule of procedural default serves no legitimate State purpose.  
Gonzalez v. State
, 8 S.W.3d 640, 642-43 (Tex. Crim. App. 2000)
; 
Murray v. State
, 24 S.W.3d 881, 888-89 (Tex. App.—Waco 2000, pet. ref’d).  Here, because we have a complete record, “it can be determined from undisputed facts clearly apparent on the face of the record” whether there has been a jeopardy violation.  
See Murray
, 24 S.W.3d at 889. The Double Jeopardy Clause protects against a second prosecution for the same offense following a conviction, a second prosecution for the same offense following an acquittal, and multiple punishments for the same offense. 
U.S. Const
. amend. V; 
Illinois v. Vitale
, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264 (1980); 
Lopez v. State
, 108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003).  Davenport’s double jeopardy claim implicates the third, multiple punishments category.  
See Barnes v. State
, 165 S.W.3d 75, 87 (Tex. App.—Austin 2005, no pet.).

A person who commits more than one sexual assault against the same complainant may be convicted and punished for each separate act, even if the acts were committed in close temporal proximity. 
 Vick v. State
, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999).  The statutes do not, however, authorize “‘stop-action’ prosecutions.”  
Patterson v. State
, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004).  That is, a defendant cannot be convicted for a completed act of sexual assault and also for conduct that is demonstrably part of the commission of the completed act. 
 Id.
  Thus, penile contact with genitals in the course of penile penetration is subsumed in a conviction for the penetration. 
 Id.
; 
see Barnes
, 165 S.W.3d at 87-88 (holding that convictions for sexual assault by penetration and by genital-to-genital contact based on single act of penetration constituted double jeopardy).  

Here, the record demonstrates that Davenport had sexual intercourse with A.S. “on a regular basis,” beginning in the summer of 2002 and continuing until the early morning hours of February 8, 2004.  It is well settled that where a charging instrument alleges the commission of an offense 
“on or about” a given date, the State may prove a date other than the one alleged in the indictment, as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statue of limitations.
(footnote: 3)  
See Sledge v. State,
 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).  A.S.’s testimony described separate acts that supported each charge and that occurred prior to the presentation of the indictment and within the applicable statute of limitations period.  
See Cabral v. State
, 170 S.W.3d 761, 764-65 (Tex. App.—Fort Worth 2005, pet. ref’d) (holding that two separate and distinct incidents of abuse that occurred on different occasions supported each charge in indictment).  Therefore, we hold that Davenport’s conviction for aggravated sexual assault by penetration and for aggravated sexual assault by genital-to-genital contact did not violate double jeopardy.  
See id.
  Consequently, we overrule Davenport’s first issue.

IV.  Expert Testimony Properly Admitted
 

During the punishment stage of trial, Davenport called Mary Jo Gutierrez to testify.  She testified that she worked for Community Supervisions and Corrections and that she was the officer in charge of probation for the trial court.  She testified about probation, sex offender registration, and what conditions would be necessary for a sex offender to be placed on probation.  On cross-examination, the State began questioning Gutierrez about the process of “grooming.”  The following exchange took place:

[STATE:]  What is grooming?

[GUTIERREZ:]  Grooming is a behavior that takes place between the offender--

[DEFENSE COUNSEL:]  I object to her testifying as to what grooming is and no predicate has been laid for the psychological theory behind grooming [that the State] refers to.

[THE COURT:]  All right.  I’m going to overrule it. She is my chief and also, before she was my chief, she was -- also had a sex offender caseload, so I think she has got enough -- 

Davenport then asked for a running objection to Gutierrez’s “grooming” testimony, and the trial court granted it.  The State went on to question Gutierrez on her background and training in supervising sex offenders.  Gutierrez testified that of the fifteen years that she has worked for the probation department, she spent five years working as a specialized sex offender caseload supervisor for the trial court.  During that time, she participated in extensive training on how to supervise sex offenders. She then explained that grooming is “a behavior that takes place with the offender and the victim, where over a period of time, the perpetrator will spend extra time, pay special attention, make the child feel special.”  Gutierrez testified that Davenport’s teaching A.S. how to untie herself was his way of grooming A.S. to get her to trust him.  

A.  Trial Court’s Comment 

In his second point, Davenport argues that the trial court abused its discretion by making unsolicited comments on the weight of Gutierrez’s testimony.  Specifically, Davenport argues that the court “actually supplied testimony as to the character and credibility of the [weight of the evidence]” when it stated that Gutierrez worked with the sex offender caseload for the court.  The State contends that Davenport failed to preserve this complaint for appeal.   

To preserve error for appellate review, a defendant must make a timely 

objection.  
Tex. R. App. P. 
33.1(a)(1); 
see Rabago v. State
, 75 S.W.3d 561, 562 (Tex. App.—San Antonio 2002, pet. ref’d).  However, if the error is fundamental, the lack of an objection will not waive the error. 
 Blue v. State
, 41 S.W.3d 129, 132-33 (Tex. Crim. App. 2000) (plurality op.); 
see 
Tex. R. Evid
. 103(d).  As strange as it may seem to require an objection to comments by the trial court, in 
Blue
, a majority of the court of criminal appeals—in a  plurality and in concurring opinions—upheld the general rule that error in a trial court’s comments to the jury is waived absent a timely objection.  41 S.W.3d at 133 (plurality op.) (“This case is highly unique and litigants should not view this holding as an invitation to appeal without making proper, timely objections.”), at 134 (Mansfield, J. concurring) (same), at 139 (Keasler, J. concurring) (same).  The plurality opinion in 
Blue
 went on to hold, however, that 
the trial court’s comments explaining to the jury that the defendant attempted to make a plea bargain with the State and that the trial court would have preferred a guilty plea “‘vitiated the presumption of innocence’” before the venire and constituted fundamental error.  41 S.W.3d at 133.  Such fundamental error, the court of criminal appeals held, did not require preservation by objection.
(footnote: 4)  41 S.W.3d at 133. 

Here, Davenport did not object to the complained of comment by the trial court.
(footnote: 5)  Consequently, we examine whether the alleged error could be considered fundamental, like the trial court’s comments in 
Blue
.  Unlike in 
Blue
, the trial court’s comment in the instant case did not taint Davenport’s presumption of innocence in front of the jury; in fact, the trial court’s comment was made during the punishment stage, after the jury had already found him guilty.  
Cf. id.
 at 132.  After the trial court made this comment, Gutierrez went on to testify about her expertise, including the fact that she has worked with the sex offender caseload for the trial court—the same fact that the trial court mentioned.  Thus, here, the trial court’s comment did not bear on the presumption of innocence or vitiate the impartiality of the jury. 
 See Jasper v. State
, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  Because Davenport did not object to the trial court’s comment and because the alleged error was not fundamental, any error is forfeited.  
See
 
Tex. R. App. P. 
33.1(a)(1);
 Rabago
, 75 S.W.3d at 562.  Consequently, we overrule his second point.

B.
  
Proper Testimony
  

In his third point, Davenport contends that the trial court abused its discretion by overruling his objection to Gutierrez’s testimony because she was not qualified to render an expert opinion about the process of “grooming.”

The burden of establishing a witness’s qualifications lies with the party offering the testimony.  
Matson v. State
, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991).  The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court’s discretion.  
Wyatt v. State
, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); 
see 
Tex. R. Evid. 
702.  Absent an abuse of discretion, the trial court’s decision to admit or exclude testimony will not be disturbed.  
Wyatt
, 23 S.W.3d at 27.

Rule 702 states, “If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.”  
Tex. R. Evid.
 702.  No rigid formula exists for determining whether a particular witness is qualified to testify as an expert.  
Harnett v. State
, 38 S.W.3d 650, 658 (Tex. App.—Austin 2000, pet. ref’d).  The rule itself provides that the requisite expertise may be acquired through knowledge, skill, experience, training, or education.  
Id
.  

Here, Gutierrez testified that she has worked for the probation department for fifteen years and that her job is to “keep an eye on” people on probation. Of those fifteen years, she spent five of them as a specialized sex offender caseload supervisor for the trial court, during which she participated in eighty hours of training each year on how to supervise sex offenders and attended sex offender treatment with the sex offenders who were on probation.  The record demonstrates that, based on Gutierrez’s extensive background, experience, and training in the area of sex offenders, the trial court could have reasonably concluded that she was qualified to testify as an expert on the process of grooming.  
See Hernandez v. State
, 53 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (stating that experience alone may provide a sufficient basis for an expert’s testimony); 
Hardin v. State
, 20 S.W.3d 84, 92 (Tex. App.—Texarkana 2000, pet. ref’d) (holding expert’s twenty years’ experience investigating and supervising sex offenders and her extensive and continuous training qualified her to testify as an expert on the issue of whether a convicted sex offender posed a continuing threat to society); 
see also Nenno v. State
, 970 S.W.2d 549, 562 (Tex. Crim. App. 1998) (stating that through interviews, case studies, and statistical research, person may acquire, as result of such experience, superior knowledge concerning behavior of sexual offenders), 
overruled on other grounds by
 
State v. Terrazas
, 4 S.W.3d 720, 272 (Tex. Crim. App. 1999)
.  Therefore, we hold that the trial court did not abuse its discretion in allowing Thompson to testify as an expert regarding the process of “grooming.”  
See Wyatt
, 23 S.W.3d at 27-28.  We overrule Davenport’s third point.

V.  Proper Admission of Evidence

In his fourth point, Davenport contends that the trial court abused its discretion by admitting evidence of Davenport’s extraneous offenses during the punishment stage of trial because the State failed to give notice of its intent to introduce that evidence.  Prior to trial, Davenport filed a motion entitled, “Defendant’s Motion for Notice of State’s Intention to Use Evidence of Extraneous Offenses at Trial.”  The trial court neither granted nor denied his motion, and the State did not provide the requested notice.  During the punishment stage of trial, the State introduced evidence of drug paraphernalia and items containing a white powdery residue found in Davenport’s home pursuant to a search warrant.  Davenport objected that he did not receive notice of the State’s intent to produce this extraneous offense evidence. Texas Code of Criminal Procedure article 37.07, section 3(g) and Texas Rule of Evidence 404(b) require that the State, upon timely request by the defense, provide notice to the defense of its intent to introduce evidence of extraneous offenses.  
Tex. Code Crim. Proc. Ann. 
art. 37.07, § 3(g) (Vernon Supp. 2005); 
Tex. R. Evid. 
404(b).  However, the notice provision of art. 37.07 is not triggered when the defendant directs his request for notice to the court, not to the State.  
See Mitchell v. State
, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998). 

Here, the document relied upon by Davenport as requesting the State to provide article 37.07, section 3(g) notice to him is a motion asking the trial court to enter an order that orders the State’s attorney to give reasonable pre-trial notice of the State’s intent to use evidence of other crimes, wrongs, or bad acts.  Although Davenport served this motion on the State, the court of criminal appeals in 
Mitchell 
held that service on the State of a motion requesting the trial court to order the State to give notice was insufficient to trigger the State’s duty to provide notice under article 37.07, section 3(g).  
Id. 
at 426-27 (“we hold that when a document seeks trial court action, it cannot also serve as a request for notice triggering the State's duty under Article 37.07, § 3(g)”).  Thus, we hold that the trial court did not err in admitting extraneous offense evidence over Davenport’s objection on this basis.  We overrule Davenport’s fourth point.

VI.  Proper Jury Argument

In his fifth point, Davenport contends that the trial court erred by overruling his objection to the State’s improper jury argument during the punishment stage of trial.  During closing argument, the State argued that “from this evidence that you have seen, you can almost guarantee and place a bet that when [Davenport] gets out one day, he is going to be calling on [A.S.].”  Davenport objected that the comment called for “speculations outside the record.”  The trial court overruled his objection and stated, “This is jury argument.  This is not evidence.  The jury has already heard the evidence.” To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  

One permissible area of jury argument is the making of reasonable deductions from the evidence.  
Gaddis v. State
, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Counsel is allowed wide latitude in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.  
Id
.  Additionally, requesting the jury to harshly punish a defendant to prevent him from “doing the same thing” in the future is a proper plea for law enforcement. 
See Kirkpatrick v. State
, 515 S.W.2d 289, 293 (Tex. Crim. App. 1974); 
Asay v. State
, 456 S.W.2d 903, 905-06 (Tex. Crim. App. 1970). 

Here, the jury had already heard evidence that Davenport spent more than two years grooming A.S., that he told her he loved her and wanted to marry her, and that he wanted to build a house together and raise their daughter together.  Also, as in 
Kirkpatrick 
and 
Asay
, the State merely was asking the jurors to punish Davenport in a way that would prevent him from doing the same thing in the future.  
See Kilpatrick
, 515 S.W.2d at 293; 
Asay
, 456 S.W.2d at 905-06.  Immediately before making this statement, the State argued that Davenport should be sent to prison, not placed on probation, so that “we don’t have to worry about him.  Or [A.S.] doesn’t have to worry about him.”  
Thus, we hold that the complained of argument constituted a reasonable deduction from the evidence and a proper plea for law enforcement.  
See Felder
, 848 S.W.2d at 94-95.  We hold that the trial court did not err by overruling Davenport’s objection to the State’s jury argument, and we overrule Davenport’s fifth point.

VII.  Conclusion

Having overruled Davenport’s five points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

GARDNER, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 15, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
A.S. testified that Davenport had just finished having sex with her before Crystal called him. 

3:
The relevant statute of limitations in this case is ten years from A.S.’s eighteenth birthday.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 12.01(5) (Vernon Supp. 2005).

4:
Because there is no majority opinion in 
Blue
, it is not binding precedent. 
See Pearson v. State
, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999).

5:
Davenport argues that he did object to the trial court’s comment, but it is clear from the record that he objected to Gutierrez’s testimony, not to the trial court’s comment.  The complained of statement was made by the court immediately after Davenport objected to Gutierrez’s testimony.  Davenport then requested a running objection for the record, “so [he would not] have to keep objecting to all of the questions.”  He made no other objections at that time.